LOUISIANA ELECTRIC LIGHT & POWER CO. v. BASS FOUNDRY & MACHINE WORKS.

(Circuit Court of Appeals, Fifth Circuit. June 20, 1895.)

No. 376.

CONTRACTS—INTERPRETATION.

The B. Co. and the L. Electric Light Co. entered into a written agreement by which certain differences were adjusted, and a sum was fixed as the amount due the former by the latter for machinery sold. It was also provided that, within 40 days, a test of such machinery should be made, and, according to the amount of saving shown over the machinery formerly used by the L. Co., the time of payment of the balance due should be fixed. The test was made more than 40 days later, in consequence of delays by the L. Co., and in a different way from that provided by the agreement, but it was satisfactory to both parties, and the L. Co. took possession of the machinery, and used it, without complaint, and without suggesting any other test, for a longer time than it would have been entitled to delay payment by any result of the test. *Held*, that the B. Co. was entitled to a decree for the balance due.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

This was a suit by the Bass Foundry & Machine Works against the Louisiana Electric Light & Power Company upon a contract. The circuit court rendered a decree for the plaintiff. Defendant appeals.

E. H. Farrar, B. F. Jonas, E. B. Kruttschnitt, and Hewes T. Gurley, for appellant.

R. H. Browne, B. F. Choate, and R. C. Bell, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

PER CURIAM. The decision in this case depends upon the proper construction of the following contract:

"The differences existing between the Bass Foundry & Machine Works and the Louisiana Electric Light & Power Company are hereby settled and adjusted as follows: It is agreed that there is due the Bass Foundry and Machine Works, upon final adjustment of accounts, as a balance for machinery, boilers, etc., sold, the sum of thirty-nine thousand seven hundred dollars ($39,700), upon which there is to be credited the following, to put the same in proper condition: Two hundred dollars for steam pipe; five hundred dollars for independent condensers; and Bass F. & M. Works is to furnish a new bed plate for same, to be put in by other party at its own expense, leaving a net balance due Bass F. & M. Works of thirty-nine thousand dollars. For the last-named sum, the Louisiana E. L. & P. Co. is to give this day the sum of fifteen thousand dollars ($15,000). The Louisiana E. L. & P. Co. is to put an additional supply pipe to the river for one of the condensers, and to cover in proper manner the steam pipes, and do such other work as shall put the plant in proper and economical working condition. When so placed, a test of four days is to be made of the working capacity of the plant under the supervision of experts, to be furnished by Bass F. & M. Works or E. P. Allis & Co., or their representatives, to ascertain the amount of consumption of coal and oil, and the quantity of labor required to operate said machinery, and to ascertain the net saving, if any, per day or month, in the running of said plant over the contract price, for the operation of the same with high-speed engines, as heretofore contracted for. When, if any, the amount is thus ascertained, for the balance of said sum of thirty-nine thousand dollars, after deducting the sum of fifteen thousand dollars, viz. twenty-four thousand dollars, said Louisiana E. L. & P. Co. is to execute its notes, payable monthly, from the date of said test, in equal amounts, for the amounts so saved, as shown by said test, up to said balance of twenty-four thousand dollars, the basis of said test to be the expense of running with 1,000 lights; said last-named notes•to be in such amounts and such number as to' aggregate said sum of twenty-four thousand dollars. Said Louisiana E. L. & P. Co. is to furnish all coal and labor necessary to make above test, which is to be made not later than forty days from this date or earlier, if possible. It is also understood and agreed that existing vendor's lien shall be retained and reserved in favor of Bass F. & M. Works upon boilers and machinery, until said purchase price thereof shall be paid, and until such time the ownership of said property shall remain in Bass Foundry and Machine Works, and not vest in Louisiana E. L. & P. Co. It is further agreed and understood that the execution of the said notes for the said sum of twenty-four thousand dollars shall be conditional upon said Louisiana Electric Light and Power Company obtaining the contract for the lighting of the streets of New Orleans within the next nine months. If it shall not, then this contract shall be binding only as to said fifteen thousand dollars, and the settlement and adjustment of the differences existing, and the amount due on the purchase price of said property, but otherwise the parties shall stand as though this contract had not been made.

"Executed in duplicate, the second day of April, 1887.

"[Signed]        La. Electric Light & Power Co.
             "Jos. Simon, Prest.
        "Bass Foundry & Machine Works,
            "By J. H. Bass, Pt."

This contract settled and determined the amount due to the Bass Foundry & Machine Works to be paid by the Louisiana Electric Light & Power Company, as follows: $15,000 in hand, and $24,000 according to the delays, to be determined by the test provided for, which was to be made in not less than 40 days, but was to be preceded by certain preparations specified to be made by the Louisiana Electric Light & Power Company. The test was not made in 40 days, because the Louisiana Electric Light & Power Company failed and neglected to make the necessary preparations. A test was made at the end of about three months, but only for eight hours, and to ascertain the saving in fuel only, which test, showing decided sav-

ing in the matter of fuel, was satisfactory to the Bass Foundry & Machine Works, and was apparently satisfactory to the Louisiana Electric Light & Power Company. Immediately upon the success of this test, and apparently with the consent of all concerned, the Louisiana Electric Light & Power Company took full possession of the engines and machinery appertaining which before had been in the possession of the makers, Allis & Co., and thereafter said Louisiana Electric Light & Power Company and its assigns have run and operated the same without complaint of any kind, and without suggesting, much less demanding, any further test. The evidence in the case shows that, under the circumstances, a continuous test of four days was impracticable, because the Louisiana Electric Light & Power Company was supplying light mainly about eight hours in the nighttime, during which time only the expense of running with 1,000 lights, as specified in the contract, could be ascertained. The evidence further shows that one test of eight hours was just as good, and bound to be as satisfactory as if the same had been repeated any number of nights; and that, in the matter of oil and labor, there was, of necessity, a decided saving in operating the two Corliss engines over the fifteen or sixteen high-pressure engines with which the comparison was to be made. As the test was to be made for the sole purpose of ascertaining the delays to be accorded the electric light and power company for the payment of the $24,000, and as the evidence shows that the said company has already had more delay than it would have been entitled to by the results of any test, and yet has paid nothing on account, and still owes for the engines and machinery which it has been using with satisfaction for over eight years, it seems clear to us that the decree of the lower court, which is for the amount of $24,000, with 5 per cent. interest from the 24th day of January, 1891, is in all respects equitable and just.

The decree appealed from is affirmed, with costs.