## BUNKER HILL & SULLIVAN MINING & CONCENTRATING CO. v. JONES.

### (Circuit Court of Appeals, Ninth Circuit. May 2, 1904.)

### No. 987.

1. MASTER AND SERVANT—DUTY OF MASTER—SAFE PLACE TO WORK.

   It is the absolute duty of a master to provide a reasonably safe place in which the servant shall work, having regard to the kind of work and the conditions under which it must necessarily be performed.

2. SAME—INSPECTION OF MINE—RIGHT OF MINER TO RELY ON PERFORMANCE OF DUTY BY OWNER.

   It is not the duty of a miner employed to operate a drill in a mine to inspect the timbering or the condition of the rock above him, but he has the right to assume that the master has performed his duty in making the place where he is directed to work reasonably safe, and to proceed with his work in reliance on such assumption, unless a reasonably

prudent and intelligent man, in the performance of his work, would have learned facts from which he would have apprehended danger to himself.

**3. Same—Assumption of Risk.**

While a person entering voluntarily into a contract of service assumes all the risks and hazards ordinarily incident to the employment, and such as are liable to arise from defects which are patent and obvious to a person of his experience and understanding, he does not ordinarily assume risks arising out of the negligence of the master.

**4. Same—Injury of Servant—Fellow Servants.**

A mine owner cannot avoid liability for the injury of a miner, arising from his failure to perform the absolute duty he owes to employés to make proper inspection, and to provide a reasonably safe place for the miners to work, by delegating such duty to one who is in another respect a fellow servant of the miner injured.

In Error to the Circuit Court of the United States for the District of Oregon.

For opinion below on motion for new trial, see 124 Fed. 675.

This is an action for damages for personal injuries sustained by the defendant in error while working in one of the mines of the plaintiff in error. It is alleged in the complaint that the plaintiff (defendant in error) was at the time of his injury, on February 13, 1902, and for some time prior thereto had been, in the employ of the defendant company in the capacity of miner and machineman; that at the time of the injury he was working as machineman in the west end of the Bodero stope of the defendant's mine, and on the floor thereof next to the top floor; that the ore and rock in the mine are loose and liable to cave, and more particularly in the roof of the stopes; that it was therefore necessary for the defendant, in working the mine, to cause timbers and lagging to be placed therein, and in the roof of the stopes, from time to time, as the work progressed, to make the same safe, and to inspect or cause to be inspected the roof of the stopes and places in and about the mine, and that it "was the duty of the said defendant mining company to cause the said place where this plaintiff was engaged, ordered, and directed to be and work to be safe, and to have the roof of said stope timbered so as to make the same safe; that, at the point where this plaintiff was engaged as aforesaid, the said defendant had theretofore excavated a large chamber, more than 40 feet in length by 10 feet in width, the roof thereof being then and there 10 feet and more from the floor of said stope, which said roof, owing to the character and condition of the rock therein, became dangerous and unsafe, and it became and was the duty of the said defendant to cause the same to be timbered and braced so that the said roof could not fall, and to inspect said roof in order to ascertain and prevent rocks and ore from falling from the roof thereof." It is further alleged that the defendant company put the plaintiff to work at the place indicated without adequately securing the roof of the stope, and without providing any protection for the plaintiff, when, without any fault or negligence on his part, and solely on account of the negligence and carelessness of the defendant, a large mass of earth, ore, and rock fell from the roof of said stope, over, against, and upon the plaintiff, and inflicted upon him serious injury, as a result of which he is, and will continue to be, lame and crippled, and unable to perform any work calling for the exercise of physical exertion.

The defendant, in its amended answer, denied that the ore and rock in the mine were loose or liable to cave; denied that the roof of the stope was or had become dangerous or unsafe, or that it had been permitted to become dangerous or unsafe through any neglect on the part of the defendant;

¶ 3. Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.

¶ 4. See Master and Servant, vol. 34, Cent. Dig. § 393.

denied that a large mass of earth, ore, or rock fell from the roof of the stope and injured the plaintiff. And for a further defense to the action the defendant alleged, among other things, that at the time and place therein stated the plaintiff was in the employ of the defendant as a miner, and was then operating a drill, and that one J. M. Davy was the shift boss of the men engaged in the work, and was a fellow servant of the plaintiff; that the face of the stope runs about two feet in advance of the timbers which were placed in the excavation to support the roof and walls, and that the machine that the plaintiff was using was placed under the timbers, which the defendant had caused to be placed there as fast as could be done in advancing the work; that the said place was perfectly safe and secure, and that no loose rock existed in the roof or walls; that the plaintiff had been directed to put his drill against the upper face of the stope, in solid rock, so as to make a hole that would be of service in extending the stope; that lower down in the face there was some rock that had been loosened by previous work, which was intended to be barred down, and was not to be drilled; that the plaintiff, instead of doing as directed, and as a miner should have done, set his drill rod against said loosened rock, though admonished by his associate miners not to do so, and proceeded to drill into the same; that such drillwork had the effect of further loosening the rock, and finally to dislodge it, and that it fell towards the plaintiff, but without injury; that no rock whatever fell from the roof of the stope, and that the rock and débris that caused the alleged injury to the plaintiff was the result of his disobedience of the orders of the foreman, and in no respect was it the result of want of care on the part of the defendant, or of the foreman in charge; that the timbering in the stope at the time was sound, safe, and perfect; and that, if the plaintiff had exercised reasonable care, no accident could have occurred. It was further alleged that the plaintiff knew at the time of the alleged injury of the condition of said stope, and the danger, if any, and assumed the risk thereof. It was also alleged that the injury to plaintiff was not incurred by reason of the matters stated in the complaint, but in consequence of a fall which occurred to the plaintiff on his way home from the mine.

The plaintiff testified that at the time he was injured he was working in a chamber next to the top in the stope; that he was set to work in that chamber on the morning of the accident by John M. Davy, the shift boss or foreman. The plaintiff had worked the day previous two floors below in the stope, but on the morning of the accident the shift boss had set him to work in this particular chamber, and showed him where to drill. He testified that the rock in front of him was solid; that he knew the face where he was drilling was solid and good. To the left there were two sets of timbers out, and his testimony was to the effect that the rock that came down, and injured him came from this untimbered section.

W. E. Wear, a mucker, who was working about 15 feet from the plaintiff at the time of the accident, testified that he saw the shift boss when he came in that morning and told the plaintiff where to put in the holes. The shift boss pointed out the places where the plaintiff was to put in the holes. He testified further that the ground seemed to be in fair condition, as far as he noticed; that the plaintiff set up his machine, and went on drilling in the face of the stope; that at about 10 or half past 10 in the morning he heard some falling ground. He saw the ground coming down. He saw the plaintiff fall, and his light was knocked out, but his machine still kept running. After the accident the witness went up on the next floor, and found that ore had been worked back too far before timbers had been put in; that it was peculiarly dangerous, from the fact that there were no stulls or sprags running from the timbers up to hold the ground in case it should slough or become air-slaked; that there should have been a sprag or a short stull put up from the timbers to the ground, to steady and support it. It was the duty of the shift boss to see that it was done. It was no part of the duty of the machinemen to see whether it was done or not. The machinemen were not supposed to be working under that ground. The witness was questioned in his direct examination in respect to the work that was being done in this part of the mine at the time of the accident. The questions and

answers were as follows: "Q. In order to do that work in a proper way, should this ground up here have been inspected before a man was put in there? A. It should have been; yes. sir. Q. Whose duty was it to do that? A. It was the shift boss' duty. Q. If he had put these timbers in here, or this square set in here, that accident would not have happened to him? A. Oh, no; it could not have happened, because the rock could not have fallen. Q. In the absence of that, if they had put these sprags in, and held that up, that injury could not have happened? A. I don't think it could. Q. If this ore had not been worked out up here too close to there, would that probably have happened? A. No; because it would have rested over on these timbers. There would have been nothing to come down." This evidence tended to show that the accident was caused by rock falling from above and to the left of where the plaintiff was working, and from ground unsupported by timbers.

The testimony on the part of the defendant tended to show that the stope where the plaintiff was set to work was completely timbered; that there was no ground near to the plaintiff that was not timbered at the time he was hurt; that there was a crack in the breast of the stope upon which he was set to work; that above this crack the stope was solid, but, below it, it was shattered and had settled down; that the plaintiff started to drill below the crack in the loose, shattered ground; that a fellow workman told plaintiff he had better bar that ground down; that he did not follow this advice, and the loose ground came down and rolled over, falling from the face of the stope in front of the plaintiff. The defendant also introduced testimony tending to show that plaintiff was not seriously hurt, but continued his work during the day; that on the next day he admitted that in returning home he fell while coming down a hill, and hurt his leg over again.

The jury rendered a verdict in favor of the plaintiff, and assessed his damages at $9,000. A judgment having been entered upon the verdict, the case is brought here by the defendant upon a writ of error.

M. A. Folson and J. C. Moreland, for plaintiff in error.

Thomas O'Day and Robertson, Miller & Rosenhaupt, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is assigned as error that at the close of the testimony the court refused to direct the jury to find a verdict for the defendant, and that the court refused to give the following instructions:

"(1) If the jury should find that the plaintiff was injured from rock falling from above, and caused by the negligence of the shift boss in not putting up timbers, then the plaintiff cannot recover.

"(2) The shift boss is and was the fellow servant with the plaintiff, and the plaintiff is not entitled to recover.

"(3) If the jury should find that the statement of plaintiff and his witness is true—that there was a space adjoining the place occupied by the plaintiff which was not covered, and the danger arising therefrom was known to the plaintiff—he cannot recover in this action.

"(4) The plaintiff, while working in the stope, had full knowledge of the danger of working where a roof was unprotected, and of the means employed to protect him therefrom; and, when he continued his work with such knowledge, he assumed the risk incident thereto, and cannot recover, if he was so injured."

There are other errors assigned, but the foregoing present the controlling questions at issue.

The main question of fact in controversy in this case was the locality from which the rock fell that injured the plaintiff. It was con-

tended by the plaintiff that it fell from the roof of the stope, and from a point that the defendant had neglected to timber as the ore was being removed. The defendant contended that it fell from the breast of the stope into which the plaintiff was drilling at the time of the injury. The pleadings and testimony presented this main question for the jury to determine. The allegations of the complaint and the testimony on the part of the plaintiff tended to establish the fact that the rock fell from the roof of the untimbered stope. The allegations of the answer and the testimony on the part of the defendant tended to establish the fact that the rock fell from the breast of the stope into which the plaintiff was drilling, and which had been loosened from the wall by the operation of plaintiff's drilling, and that the stope above was completely timbered.

As legal propositions in support of the plaintiff's case, it was contended that it was the duty of the master to provide a reasonably safe place in which the servant was required to work. As legal propositions in support of the defendant's case, it was contended with respect to the place in which the plaintiff was set to work, first, that the danger to the plaintiff was apparent, and he assumed the risk of the employment and contributed to the result; second, that the defendant was not charged with the duty of furnishing and keeping the place in a safe condition. This defense was submitted to the jury by the court in an instruction that clearly and distinctly directed a verdict for the defendant, if the jury believed the testimony on the part of the defendant. The court said in its instructions:

"If the injury to the plaintiff was caused by rock and other substances falling upon him from the drift in which he was working, and not from overhead, your verdict must be for the defendant."

This instruction was certainly as favorable to the defendant as any instructions could be, upon the defense set up in the answer, and the testimony introduced in support of that defense. In view of this positive instruction of the court, the jury must be presumed to have found as a fact that the rock fell from overhead, and not from the drift in which the plaintiff was working.

With respect to that feature of the case, the court instructed the jury that:

"It is the duty of the master to furnish the servant a reasonably safe place and appliances with which to work, and to make such reasonable inspection of such place and appliances as to not subject the servant to unusual risks or dangers. And if you find from the evidence in this case that the defendant knew that the ground was loose and liable to cave at or near the point described by the evidence, or by a reasonable inspection could have known, and you further find that the plaintiff did not know, and it was no part of the plaintiff's duty to make an inspection for the purpose of ascertaining, the condition of said place, and you further find that the plaintiff was set to work, and, while so working, rocks came down from the upper chamber above the plaintiff, and he was thereby injured, then I instruct you that your verdict must be for the plaintiff."

This instruction was qualified by the following instructions:

"Even though you should find from the evidence that the defendant was negligent in the matters complained of in the complaint, the plaintiff cannot recover, unless you further find that the plaintiff was himself free from con-

130 F.—52

tributory negligence which contributed directly to the injury. Contributory negligence is the failure to exercise that degree of care and diligence which an ordinarily prudent man would exercise under similar circumstances or similarly situated."

"A servant not only assumes the risks ordinarily incident to his employment, but he also assumes such increased risks as he may knowingly and voluntarily undertake; and if the plaintiff went to work in a dangerous place, and the danger was apparent, or might have been discovered by the use of ordinary intelligence or inspection, then he assumed such risk when he undertook the work, and cannot recover."

"The master is not required to be present at the working place at all times, in person or by representative, to protect a laborer from the negligence of his fellow servant, or from his own negligence in the constantly changing conditions of the work."

There is no rule of law more firmly established than that it is the absolute duty of the master to provide a reasonably safe place in which the servant shall work, having regard to the kind of work, and the conditions under which it must necessarily be performed. Union Pac. Ry. Co. v. Jarvi, 69 Fed. 65, 3 C. C. A. 433; Western Coal Min. Co. v. Ingraham, 70 Fed. 219, 17 C. C. A. 71; Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Mather v. Rillston, 156 U. S. 391, 15 Sup. Ct. 464, 39 L. Ed. 464. If the jury believed the testimony on the part of the plaintiff, the safety of his employment depended upon the proper timbering of the stope above and immediately adjoining the place where he was set to work. He was not employed as a timberman, but as a miner and machineman, or driller. It was no more a part of his duty to inspect the timbering above him, or the condition of the rock in the chamber above, according to the custom in that mine, than it would have been to inspect the track on the tunnel floor, or the cars in which the ore was carried out. Other men were detailed for that part of the work. The shift boss, whose orders he was obliged to obey, indicated the place in which he was to work; directed the number of holes to be drilled in the breast of the tunnel, and that the blasts should be fired at noon. He entered upon the performance of his duties, and was warranted in the assumption that the necessary precautions had been taken by the defendant to prevent the caving and falling of rock from the stope above. As was said by the court in Railway Co. v. Jarvi, supra, in comparing the relative duties of master and servant:

"Of the master is required a care and diligence in the preparation and subsequent inspection of such a place as a room in a mine that is not, in the first instance, demanded of the servant. The former must watch, inspect, and care for the stopes through which and in which the servants work, as a person charged with the duty of keeping them reasonably safe would do. The latter has a right to presume, when directed to work in a particular place, that the master has performed his duty, and to proceed with his work in reliance upon this assumption, unless a reasonably prudent and intelligent man, in the performance of his work as a miner, would have learned facts from which he would have apprehended danger to himself."

While it is a ruling principle that a person entering voluntarily into a contract of hiring assumes all the risks and hazards ordinarily incident to the employment, and liable to arise from the defects which are patent and obvious to a person of his experience and understanding, it is equally true that risks arising out of the negligence of the master

are not those ordinarily incident to the employment, and are not, therefore, assumed by the servant. Texas, etc., R. R. Co. v. Archibald, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188. The risks inherent in work of the kind in which the defendant in error was engaged are well stated in Kelley v. Mining Co. (Mont.) 41 Pac. 273—a case wherein the plaintiff was suing for damages for injuries caused while working as a miner in drilling a tunnel. The court said:

"The plaintiff was employed at the time of the accident in running a tunnel in defendant's mine. He was doing this work under the immediate supervision and direction of John Sheehan, the foreman and manager of the mine. Sheehan was not working in the mine with plaintiff. The plaintiff was not engaged in creating a place on his own judgment and at his own risk. He assumed the risks naturally attendant upon driving the tunnel. It was the duty of defendant to keep that part of the tunnel or place already created safe, by whatever reasonable means were necessary. If the plaintiff had been injured while in the actual work of drilling or blasting in the face of the tunnel he was driving, he may have had no claim on the defendant for damages, for these were risks assumed as a miner. But he did not assume the risk of defendant's failure to keep that part of the tunnel or place already created reasonably safe and secure. For instance, if a stone or material blasted or dug from the tunnel by plaintiff should have been blown against or should have fallen upon him, he would have had no remedy against defendant for any injury sustained thereby. This is a risk belonging to his employment, and which he assumed. But he did not, by his employment as a miner in driving the tunnel, assume the risk of the failure of the defendant to take such reasonable precautions as were requisite to prevent the caving and falling of the roof of that part of the tunnel already created, upon him, while engaged in his work. * * * He assumed the risks incident to the work in front of him, and not the risks of defendant's failure to properly care for that part of the tunnel or place behind him which he had completed and turned over to the care and control of the defendant."

In that case the injury occurred from the caving of rock behind the plaintiff, and because of the accumulation of rock and débris on the floor of the tunnel impeding his escape. In the present case the evidence on the part of the plaintiff tended to show that the rock fell from a place which was entirely under the control of the master, and which the servant was not bound to inspect. A defect apparent to one making a careful inspection of a stope in a mine might easily be unseen by a miner attending to his work as directed, and having only the aid of his candle to light up the walls of the tunnel or stope. It does not appear from the evidence that the defendant in error could have discovered that the roof of the stope was in danger of caving, without a particular inspection thereof, or that the timbering was insufficient to secure the loose rock above. It was not his duty to timber the mine, or to pay any attention to that work, unless it was obviously defective, in his understanding, in the immediate vicinity of his work. That duty belonged exclusively to the defendant, and the question whether or not it exercised reasonable care in its fulfillment was properly submitted to the jury.

With regard to the contention that the negligence, if any, causing the accident, was solely that of the shift boss, and, as he was a fellow servant of the plaintiff, the defendant was not liable for his negligence, we do not think the trial court erred in refusing to so instruct the jury. To support this contention would be to overlook the important principle that one cannot escape liability for neglect of a positive duty by dele-

gating that duty to another. It does not matter, in the present case, whether or not the shift boss be considered as the fellow servant of the plaintiff. The question is, did the defendant fail to perform its absolute duty to the plaintiff to provide a reasonably safe place in which he should perform the work given him to do? The Supreme Court of the United States, in the case of Northern Pac. R. R. Co. v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994, has stated this doctrine very clearly and decisively. It is there said:

> "The general rule is that those entering into the service of a common master become thereby engaged in a common service, and are fellow servants, and prima facie the common master is not liable for the negligence of one of his servants which has resulted in an injury to a fellow servant. There are, however, some duties which a master owes, as such, to a servant entering his employment. He owes the duty to provide such servant with a reasonably safe place to work in, having reference to the character of the employment in which the servant is engaged. He also owes the duty of providing reasonably safe tools, appliances, and machinery for the accomplishment of the work necessary to be done. He must exercise proper diligence in the employment of reasonably safe and competent men to perform their respective duties, and it has been held in many states that the master owes the further duty of adopting and promulgating safe and proper rules for the conduct of his business, including the government of the machinery and the running of trains on a railroad track. If the master be neglectful in any of these matters, it is a neglect of a duty which he personally owes to his employés, and, if the employé suffer damage on account thereof, the master is liable. If, instead of personally performing these obligations, the master engages another to do them for him, he is liable for the neglect of that other, which in such case is not the neglect of a fellow servant, no matter what his position as to other matters, but is the neglect of the master to do those things which it is the duty of the master to perform as such."

The question turns, therefore, "rather on the character of the act than on the relations of the employés to each other. If the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master." B. & O. R. R. v. Baugh, 149 U. S. 368, 386, 13 Sup. Ct. 914, 921, 37 L. Ed. 772.

We think the question of actionable negligence on the part of the defendant was submitted to the jury under the proper instructions. The judgment of the Circuit Court is affirmed.