FIRMENT v. BERWIND-WHITE COAL MINING CO.

(Circuit Court, S. D. New York. June 27, 1908.)

1. MASTER AND SERVANT—INJURY TO SERVANT—ACTION—INSTRUCTIONS.

In an action by a servant against the master to recover for a personal injury resulting from an explosion of steam pipes in a boiler room where plaintiff was working an instruction was not erroneous which charged, in effect, that it was the "absolute duty" of defendant to exercise reasonable and due care to provide a reasonably safe place and reasonably safe and well-constructed appliances, and keep them in a safe and proper condition.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1150–1154.]

2. SAME—BURDEN OF PROOF.

While the burden of proving defendant's negligence in such case rested on the plaintiff, where he gave credible evidence that certain dangerous defects in the machinery and appliances existed on and prior to the day of the accident, and were known to defendant, the burden was thrown on defendant to show that they had been repaired or did not exist.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 900–905.]

3. SAME—INSTRUCTIONS.

Instructions in an action by an employé against the master to recover for a personal injury resulting from the bursting of steam pipes in defendant's boiler house reviewed, and held not to contain any material or prejudicial errors which entitled defendant to a new trial.

On Motion to Set Aside Verdict and for a New Trial.

Ira B. Wheeler, for plaintiff.
Theall & Beam (Austen G. Fox, of counsel), for defendant.

RAY, District Judge. The plaintiff, Joseph Firment, had been in the employ of the defendant about 18 years, and had every appearance of being an honest and reliable man. He was evidently not an educated man and spoke broken English, and there was some difficulty, at times, in getting at his exact meaning. On the 3d day of December, 1905, Sunday, the plaintiff, as he claims, was working in and about the boiler house at shaft or slope 7 of defendant at Horatio, Pa., concededly in the employ of defendant at the time, although it was denied he was working on the day in question, or that it was his duty to work, when he was severely and permanently injured by being struck on the limb below the knee by a part of the steam pipes, etc., connected with the boilers in the boiler room, which was thrown against or upon him by reason of a sudden explosion of such pipes or some part of them, whereby one or more sections were thrown out with great violence, and the room filled with steam. The plaintiff claimed, and gave evidence tending to show, that he had regular duties in and about this boiler house, and that on the day of the accident and injury he was not only attending to them, but was called upon by one of his superiors, who was making repairs in this boiler room, to assist, and that he did and was on his way through the boiler room to perform other duties assigned him by defendant when the explosion occurred and the injury was received. The defendant, on the other hand, contended, and gave evidence tending to show, that this was not true; that plaintiff was not at work or called upon to work on the day in question, and was an idler, interloper, spectator at the time, having no business to do or duty to perform at the boiler house. No point is made on this motion that there was error in admitting or rejecting evidence. The motion is based on alleged errors in the charge to the jury. The court instructed the jury pointedly and explicitly that if the plaintiff had no duties to perform there that day, or that if he had been performing duties for defendant, and had reasonable time to get away, and had not left, but was hanging about as an idler or interloper when the accident occurred, he could not recover.

The plaintiff claimed that certain sections or a certain section of this pipe with tees and nipples was badly out of repair some little time prior to the accident, and in a dangerous condition, so that an explosion was liable to occur, although he did not appreciate the danger, and that it was temporarily fixed up and braced to prevent the part that did blow out from blowing out, and that he was told a new part would be put in, etc., and that he relied thereon. He also claimed it was not properly, efficiently repaired by competent persons if repaired at all prior to the accident, and that he did not know such fact, and remained and worked there and received his injury when in the line of his duty to defendant as its employé; also that the risk of these defective pipes was not one he assumed. A Mr. Cook was the superintendent of defendant in charge there, and Howard Deffenbaugh was a foreman under him, and it was conceded he had power to set the plaintiff at work in the boiler house, if he did, which alleged

fact defendant denied. On the 19th day of November, 1905, the plaintiff claims that the repairs were made and the bracing done, but that one of the flanges was left cracked. Thomas Williams was the fire boss and Thomas Mendes was machine boss inside, and one Ernest Johnson was also a machine boss. The plaintiff was injured December 3d, and did no work after that during that month. His time was made out, and returned or turned in at four days. The plaintiff claimed he did extra work, and that this month he did one day's extra work, and that the defendant itself counted Sunday as a full day's work and paid him therefore, and hence that his time and account for the month made out by defendant and given him was very material and quite conclusive that defendant recognized him at the time as in its employ on Sunday when injured.

In charging the jury as to the duty of the defendant to the plaintiff, assuming him to have been at work by authority of the defendant and for it on Sunday, the court said:

"Now, gentlemen, as matter of law, it was the absolute duty of the defendant company to provide a reasonably safe place for the plaintiff to work, having due regard to the kind of work to be done and the conditions under which it was to be performed, and, of course, this boiler house would not be a reasonably safe place in which to work if the machinery, pipes, etc., was in such a condition that it would be liable to explode, go to pieces, fly about. It was also the duty of the defendant, as to machinery and appliances, to furnish reasonably safe and well-constructed machinery and appliances, including these boilers and pipes, and by pipes that includes the pipes, flanges, and nipples. Understand, I will not name them each time as I go along. I am not going to mention each part, because when I speak of pipe, I mean the whole unless I so specify. It was also the duty of the defendant as to pipes and appliances to furnish reasonably safe and well-constructed machinery and appliances, including the boilers and pipes, and to keep them in a safe and proper condition, exercising reasonable and due care so to do. It was also the duty of the defendant to use reasonable care to properly inspect the same from time to time, and see that they were in a reasonably safe and proper condition and free from serious or dangerous defects. If any defects or defect in these pipes were discovered by or known to the defendant or to its inspector or superintendent, then it was its duty to properly repair, and, if unsafe, to discontinue the use thereof or properly warn or notify its employés working with and about such appliances and machinery of the danger of so doing.

"If this pipe and flange or either of them or any of them that particular one or any of them, if they were out of repair and defective in the respects named or described so as to be unsafe, then it was the duty of the defendant company to promptly repair and put them in a safe condition, provided it knew or ought to have known of such defects, and, as I have stated, if in the exercise of reasonable care by a proper inspection at proper times defects which existed, if any could have been discovered, why, then, they were charged with notice whether they knew it or not, because it would be negligence not to inspect and not to exercise reasonable care to discover such defect.

"If there were any latent, hidden, concealed, or unusual danger connected with the use of this defective pipe and flange, or any of them, of which the plaintiff was ignorant, after the repairs were made on the 19th, then it was the duty of the defendant company to inform the plaintiff as well as its other employés about there of such danger, provided, of course, that this plaintiff worked in or about there or had duties to perform there. Of course, it was not their duty to go out to the miners in the mine and inform them, or to go upon streets and inform passersby, but it would have been their duty to point out latent, hidden, concealed, unknown, or unusual dangers arising from conditions of which they knew or ought to have known to

such of their employés as had occasion to be in or about this boiler house or in that vicinity where they would be liable to receive injury if there was any explosion.

"If the defendant failed in its duty to plaintiff in either of the respects named, namely, to furnish a reasonably safe place on account of unsafe pipes or appliances, flanges, etc., or (2) to furnish safe appliances and machinery, (3) to keep such appliances and machinery in a reasonably safe condition and in proper repair, or (4) to inform him of such dangers from pipes, defective pipes, if any, they being out of repair, then in either case the defendant was negligent. If such negligence, if you find negligence, if such negligence on the part of the defendant caused injury to the plaintiff, then this plaintiff is entitled to recover damages for the injury which he received by the reason of such negligence, and of which it, the negligence, was the proximate cause, unless the plaintiff himself knew the danger and risks, or ought to have known them, and assumed the risks, or was himself guilty of contributory negligence, that is, of such negligence on his part contributing to the injury as will, within the rules which will be stated by me, defeat a recovery."

This is challenged for the reasons, first, the court said "it was the absolute duty of the defendant company to provide a reasonably safe place"; and, second, the court said, "If there were any latent, hidden, concealed, or unusual danger connected with the use of this pipe and flange, or any of them, of which the plaintiff was ignorant, after the repairs were made on the 19th, then it was the duty of the defendant company to inform the plaintiff," etc., and did not qualify or limit the duty to such dangers as were known to defendant or in the exercise of due and reasonable care ought to have been known by it in that very sentence. This duty as to latent defects was immediately and in the very next sentence qualified and explained by saying to the jury:

"Of course, it was not their duty to go out to the miners in the mine and inform them, or go upon the streets and inform passersby, but it would have been their duty to point out latent, hidden, concealed, unknown, or unusual dangers arising from conditions of which they knew or ought to have known to such of their employés as had occasion to be in or about this boiler house or in that vicinity where they would be liable to receive injury if there was any explosion."

Other parts of the charge confined this duty to such as were there at work. On this subject the Supreme Court of the United States has aptly said in Mather v. Rillston, 156 U. S. 398, 399, 15 Sup. Ct. 464, 467, 39 L. Ed. 464:

"All occupations producing articles or works of necessity, utility, or convenience may undoubtedly be carried on, and competent persons, familiar with the business and having sufficient skill therein, may properly be employed upon them, but in such cases where the occupation is attended with danger to life, body, or limb it is incumbent on the promoters thereof and the employers of others thereon to take all reasonable and needed precautions to secure safety to the persons engaged in their prosecution, and for any negligence in this respect, from which injury follows to the persons engaged, the promoters or the employers may be held responsible and mulcted to the extent of the injury inflicted. * * * Indeed, we think it may be laid down as a legal principle that in all occupations which are attended with great and unusual danger there must be used all appliances readily obtainable known to science for the prevention of accidents, and that the neglect to provide such readily attainable appliances will be regarded as proof of culpable negligence. If an occupation attended with danger can be prosecuted by proper precautions without fatal results, such precautions must be

taken by the promoters of the pursuit or employers of laborers thereon. Liability for injuries following a disregard of such precautions will otherwise be incurred and this fact should not be lost sight of. So, too, if persons engaged in dangerous occupations are not informed of the accompanying dangers by the promoters thereof, or by the employers of laborers thereon, and such laborers remain in ignorance of the dangers and suffer in consequence, the employers will also be chargeable for the injuries sustained. Both of these positions should be borne constantly in mind by those who engage laborers or agents in dangerous occupations, and by the laborers themselves as reminders of the duty owing to them. These two conditions of liability of parties employing laborers in hazardous occupations are of the highest importance, and should be in all cases strictly enforced."

As charged by the court in this case, the duty of the defendant is discharged when it uses reasonable care, under the circumstances of a particular case, to inspect and discover defects and informs its servants of latent, hidden, concealed, or unusual dangers, whether arising from defects or from conditions inherent in the business or machinery and appliances necessarily employed. And the duty of giving warning and instruction is, of course, confined to the dangers and defects known to the employer, or which in the exercise of due care ought to be known to the employer, and which are unknown to the servant. The jury was plainly instructed on this point.

Returning to the use of the words "absolute duty," it is plain to my mind that the charge was correct under the leading and controlling cases. The charge was that it was the absolute duty of the defendant to provide a reasonably safe place for the plaintiff to work, and to furnish reasonably safe and well-constructed machinery and appliances, including boilers and pipes, and to keep them in safe and proper condition, exercising reasonable and due care so to do, and having due regard to the kind of work to be done, and the conditions under which it was to be performed; that is, it was the absolute duty of the defendant to exercise reasonable and due care to provide a reasonably safe place and reasonably safe and well-constructed appliances, including pipes, etc., and to keep them in a safe and proper condition, having due regard to the kind of work and conditions under which done. As I understand the law, and as the Supreme Court of the United States declares the law to be, the duty to exercise reasonable and due care in these respects is an absolute duty. The duty exists, and it cannot be delegated, and it is unqualified. An absolute duty to provide a reasonably safe place, exercising reasonable and due care so to do, is not different from the duty to exercise reasonable care to provide a reasonably safe place. The jury was plainly told what the duty was, viz., to use reasonable care to provide a reasonably safe place and also that this duty was absolute on its part, having due regard to the kind of work and the conditions under which it was to be done. No jugglery with words can change the plain import and meaning of the charge. Says Thompson in his Commentaries on the Law of Negligence (volume 4, § 3874):

"As in other cases, the obligation of the master to see that the place where his servant is required to work is reasonably safe, is primary, absolute, and nonassignable, in the sense that the master is responsible for the negligence of any servant or agent, of whatever grade, to whom he delegates the performance of it."

Said Morrow, C. J., in Bunker Hill, etc., v. Jones, 130 Fed. 818, 65 C. C. A. 368:

"There is no rule of law more firmly established than that it is the absolute duty of the master to provide a reasonably safe place in which the servant shall work, having regard to the kind of work and the conditions under which it must necessarily be performed. Union Pac. Ry. Co. v. Jarvi, 69 Fed. 65, 3 C. C. A. 433; Western Coal Min. Co. v. Ingraham, 70 Fed. 219, 17 C. C. A. 71; Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Mather v. Rillston, 156 U. S. 391, 15 Sup. Ct. 464, 39 L. Ed. 464."

Says the Supreme Court of the United States in B. & O. Railroad v. Baugh, 149 U. S. 386, 13 Sup. Ct. 914, 37 L. Ed. 772:

"Again, a master employing a servant impliedly engages with him that the place in which he is to work and the tools or machinery with which he is to work, or by which he is to be surrounded, shall be reasonably safe. It is the master who is to provide the place and the tools and the machinery, and, when he employs one to enter into his service, he impliedly says to him that there is no other danger in the place, the tools, and the machinery, than such as is obvious and necessary. Of course, some places of work and some kinds of machinery are more dangerous than others, but that is something which inheres in the thing itself, which is a matter of necessity, and cannot be obviated. But within such limits the master who provides the place, the tools, and the machinery owes a positive duty to his employé in respect thereto."

If, when the master employs a servant and sets him to work, he "impliedly engages" that the place and tools to be used "shall be reasonably safe," it seems to me that the duty to exercise reasonable care that they shall be so is an absolute duty. In Kranz v. L. I. R. Co., 123 N. Y. 1, 4, 25 N. E. 206, 20 Am. St. Rep. 716, the Court of Appeals held:

"The defendant owed to its servant the duty of providing a place reasonably safe for the work which he was directed to do."

In Lilly v. N. Y. C. & H. R. R. Co., 107 N. Y. 574, 14 N. E. 503, the Court of Appeals, per Peckham, J., said:

"The duty of an employer to provide safe and proper machinery for his employés, and the extent of that duty, are too well settled in this court to need the citation of authorities."

In Santa Fé Pac. R. R. v. Holmes, 202 U. S. 442, 26 Sup. Ct. 677, 50 L. Ed. 1094, the court says:

"It is the duty of a master to furnish safe places to work in and safe instruments to work with, and of this there need be no discussion. The duty is a continuing one, and must be exercised whenever circumstances demand it."

In Choctaw, etc., R. R. v. McDade, 191 U. S. 67, 24 Sup. Ct. 24, 25, 48 L. Ed. 96, the court says:

"It is the duty of a railroad company to use due care to provide a reasonably safe place and safe appliances for the use of workmen in its employ. It is obliged to use ordinary care to provide properly constructed roadbed, structures, and track to be used in the operation of the road. Union Pac. R. Co. v. O'Brien, 161 U. S. 451, 16 Sup. Ct. 618, 40 L. Ed. 766."

If the master is "obliged" to do this, it seems clear that the duty is an "absolute" one.

· In Vogel v. American Bridge Co., 180 N. Y. 376, 73 N. E. 1, 2, 70 L. R. A. 725, the court said :·

"The· doctrine of the responsibility of the master for the neglect, or ·default of 'one who, in the eye of the law, is his alter ego, applies to the obligation to furnish to his employés a reasonably safe place to work in and safe appliances to work with."

The expression "reasonably safe place" is quite generally and almost universally used to express the duty of the master to exercise due or 'reasonable care to provide a safe place. It is contended that there was error in the charge as to the burden of proof. On that subject the court charged :

"Now, then, gentlemen, the burden of proof. Negligence is never presumed. The presumption, in the first instance is ·that the defendant did its duty. Negligence, as I said, is not presumed, but it must be proved by a fair preponderance of evidence, and the burden of proving negligence is on the plaintiff. A finding of negligence cannot be predicated or founded on a surmise or guess or speculation. It must be predicated on the proof in the case, but it may be predicated and founded upon all the proof in the case when it is all in. The defendant, as I said, is presumed in the first instance to have done its duty. Before the plaintiff can recover, he must have established negligence. If the steam pipes and flanges were in a reasonably safe and proper condition and condition of repair and the accident happened from some cause not shown by evidence in the case, then the plaintiff cannot recover. You have heard the evidence as to defects and the conditions. It is for you to say on this whole evidence what was the condition of that pipe line, what were these conditions of these pipes, and were they properly inspected, were they properly repaired, and after they had made their repairs, as the defendant says down at boiler No. 1, and as Joe says on the 19th up here at Y—there they differ—but in either event were there defects?"

Later in the charge to cover a certain issue raised by the evidence and requests to charge the court said :

"Gentlemen, what was the cause of the explosion? If it was some unknown thing, if the cause was either from the mode of turning on the steam or from defects in the pipes or their connections which ordinary and due inspection could not discover, why, then, of course, negligence, if they had made reasonable inspection and due inspection, negligence would not be made out. If,. on the other hand, this explosion, accident, injury arose from defects which they saw or which, in the exercise of reasonable care they might have seen, or from existing defects which they knew of and had not properly repaired, or from defects which they ought to have known of in the exercise of due care, and neglected to repair, and Joe, the plaintiff, was rightfully there, had been to work there that day under Johnson, and he was not guilty of contributory negligence, then, of course, he would be entitled to recover.

"Now, gentlemen, on the day in question, if the steam pipes and flanges were in a reasonably safe and proper condition and condition of repair and the accident happened from some cause not shown by evidence in the case, then the plaintiff cannot recover. If on the day in question, when it is conceded repairs had been going on, these pipes and flanges were carefully and properly inspected and examined by men reasonably competent for the duty, and no defects were found or known to defendant or its inspectors in charge, then defendant had done its duty in this regard and plaintiff cannot recover, for in such a case of course negligence would not be shown. Now, if on the Friday preceding the accident the pipes, flanges, etc., were properly examined and inspected, and all defects were remedied which were discovered or known, or which in the exercise of reasonable care ought to have been discovered and known, and none were discovered thereafter, or there were none which in the exercise of reasonable care ought to

have been discovered, then no negligence has been shown. Unless plaintiff has given evidence, taking all the evidence of all the witnesses together, showing defects and negligence, no unfavorable inference can be drawn against the defendant, for the reason it has not shown or explained the cause of the accident, because the burden of showing negligence was on the plaintiff, and because defendant was not called upon to show, to explain the cause of this accident until the plaintiff had shown existing defects in these pipes. When those were shown to exist, and they were shown to be dangerous, as one of the plaintiff's witnesses, its expert, testified, when that appeared, then the burden was thrown on the defendant of showing that none of the defects existed, and of showing, of course, that proper inspection and reasonable care would not have discovered them, did not discover the defects which caused the injury. In short, it was not the duty of the defendant to explain the cause of the accident, or show it was an unknown cause, until the plaintiff had given evidence showing or tending to show it was caused by the defendant's negligence."

One of plaintiff's witnesses testified that if certain defects in the pipes, which there was evidence tending to show existed, did exist, then they were dangerous, and that an explosion was likely to occur. It was not denied that on the 19th certain dangerous defects existed; but by defendant it was claimed they were repaired, while the plaintiff contended they were not. I take it that, when credible evidence was given by the plaintiff that certain dangerous defects existed on the day of and prior to the accident and were known to the defendant, the burden was thrown on the defendant to show that they had been properly repaired, or that they did not exist. This had nothing to do with the burden of proving defendant's negligence. The jury later was told explicitly that on the whole evidence the burden of showing negligence on the part of the defendant was on the plaintiff, that defendant was not called upon to explain the accident or show its cause, or that it was not due to its negligence until the plaintiff had given evidence showing that dangerous defects existed and were known to the defendant. But, when such evidence was given, it was incumbent on the defendant to meet it and give evidence tending to show the contrary. This was the burden of giving evidence on a certain point in the case. Of course, the burden of showing defendant's negligence, and that it was the proximate cause of plaintiff's injury and consequent damage, was on the plaintiff from first to last, and this burden did not shift. But the burden was on the defendant of meeting certain evidence in the case, and of giving evidence tending to show that the explosion did not occur from dangerous defects in the pipes liable to cause just such an explosion as actually did occur when the plaintiff had given credible evidence that such defects existed and that they would cause such an explosion.

The court later more fully charged:

"The defendant, gentlemen, was not bound to adopt any extraordinary tests for discovering defects in its appliances or machinery. It was only bound to exercise ordinary care in employing competent men for that purpose and in seeing to it that they did perform their duties. If that was done, if competent and proper men were employed, and if they did their duty, why, then, of course, the duty of the defendant in that respect was performed. Of course, negligence, as I have already told you in substance, cannot be based, a finding of negligence cannot be based upon the mere fact that an accident occurred, that a break occurred. It must appear from evidence in the case that that break, that explosion, was caused by negligence, by

negligence either in having defective pipes, etc., here in the first instance, or in neglecting to discover defects or in neglecting to repair defects. Of course you must be satisfied in order to find for the plaintiff in this case, you must be satisfied on the evidence in the case, that the accident, the break, arose from some defect which existed because of the negligence of the defendant, and I say, gentlemen, that negligence is never presumed, negligence must be proved, and if, on the question of negligence, the evidence is evenly balanced, then it is your duty to find for the defendant, because inasmuch as the plaintiff has the burden, why, if he fails to establish negligence, sustain the burden, then he fails in his case. When you come to contributory negligence, the burden is on the defendant to show that the plaintiff was guilty of negligence on his part which contributed to the injury. There the burden shifts right around. So you could not find contributory negligence on the part of this plaintiff, unless that has been established by a preponderance of evidence. If there was a defect and it was unknown to the defendant, if there was any defect here which caused this accident and injury, and the evidence is evenly balanced as to whether or not that could have been discovered by proper inspection and examination, discovered by the defendant, assuming it was unknown, why, then, of course, negligence would not be proved because on the evidence, if evenly balanced, the burden would not be sustained. The defendant was not bound to exercise extraordinary or utmost care, but only reasonable care, and on a question of negligence the question of care applies to everything, of course, of that kind. I have told you, gentlemen, that the burden of proof was on the plaintiff on the question of negligence, not only to prove that there was either a defect which caused the accident and that it was known to the defendant, or a defect causing the accident which in the exercise of ordinary care it could have discovered. I think I have gone over it sufficiently to explain the necessity of knowledge of a defect or a failure to know because of the want of proper inspection or proper examination, and it must have been negligence and a failure to repair. I have told you already if this was a mere accident, and there was no negligence, then, of course, the plaintiff could not recover. I think I have told you the defendant was not an insurer. I know I did. I have covered that."

With these instructions, qualifying, and explaining what had been said before, the jury could not have been misled. Explicitly they are instructed that defendant was not bound to exercise extraordinary or utmost care, only ordinary care as to a safe place, machinery, repairs, etc., and that burden of proof was on the plaintiff not only to prove that there was a defect which caused the accident, and that it was known to the defendant, or that in the exercise of ordinary care it could have been discovered; and then, again, the court repeated:

"I think I have gone over it sufficiently to explain the necessity of knowledge of a defect or a failure to know because of the want of proper inspection or proper examination, and it must have been negligence and a failure to repair."

And again the court later charged:

"Now, the defendant company did not warrant or insure the safety of the plaintiff or the perfection of these boilers and pipes. Its duty was discharged when and only when its agents whose business it was to supply such instrumentalities and keep them in repair and safe condition had exercised due or reasonable care to keep them in such condition as to be reasonably and adequately safe for the use of the employés."

Exception is taken to what the court said in regard to the time and account given to the plaintiff by the defendant after the accident. Mr. Fox said at near the close of the trial:

"We accept the paper as true and the paper was made up from the slips and the pay roll. Of course, it was true, no doubt about it."

That paper credited the plaintiff four full days' work in December. It was important as bearing on the question whether plaintiff worked on Sunday the 3d day of December at the request of the defendant. Certain of defendant's witnesses claimed plaintiff did not work on that day. The court said, referring to that paper:

"That 'may be' better evidence than the mere memory of a man, better evidence than the mere recollection of somebody, something that was made up at the time from the papers themselves. But, gentlemen, the court intimates no opinion.. That question of fact is for you, and you solely, to determine, whether on this Sunday of this injury and accident plaintiff was an idler and an interloper, or whether he actually did work there."

I think that, with the concession that the paper, which credited the plaintiff four full days' work in December, this charge was absolutely correct, and the fact that there was no pretense he worked elsewhere than at the boiler house that day, it was correct to say that the paper "may be better evidence than the mere memory of a man," referring to the witnesses of defendant who had said on the stand that plaintiff was not then at work at all that day. It is a settled rule that the charge of the court must be taken as a whole, and read with the evidence in the case. I have gone over the charge made, and find no material errors prejudicial to the defendant. The requests were all covered by the charge as made. After the charge was completed, no further requests were, made and exceptions were taken after the jury had retired. There was no substantial doubt that the plaintiff worked in the boiler house the day of the accident by authority of the defendant; that the pipes or flanges were in a bad condition; that the defendant's employés had been at work at them all that day; that they went to pieces and that plaintiff was injured by the explosion. It was for the jury to say whether or not the defendant had used reasonable care to inspect and discover defects and repair those known or which ought to have been known. The evidence disclosed that the men intrusted with the duty of inspecting and repairing those pipes were men of little knowledge and experience in the business. The verdict was moderate in amount and amply sustained by the evidence.

The motion for a new trial is denied.