# STAUBLEY

## THE POTOMAC ELECTRIC POWER COMPANY.

---

### MASTER AND SERVANT; NEGLIGENCE.

1. An employee engaged in a dangerous occupation does not take all the risks of the employment, but only such as are ordinary and usual, and against which he may guard himself by reasonable care; and the employer is bound to provide him with reasonably safe appliances for his use.

2. The trial court errs in directing a verdict for the defendant in an
   action by a former employee of an electric lighting company
   against the company for injuries received in the course of his
   employment where it appears that the plaintiff, about twenty-two
   years old, who had been employed by the company about six months
   as lineman and in doing different jobs about its various power-
   houses, was ordered in conjunction with another and younger man
   to draw up a piece of heavy iron cable from the cellar of one of
   the power houses through a hole in the floor to a narrow space be-
   hind a switchboard, a propecting iron lug of which was uninsu-
   lated and heavily charged with electricity, and in pulling up the
   cable his body swayed against the switchboard, touched the lug
   and he was severely injured, and also that such order was given
   by the company's foreman without proper warning to the plain-
   tiff of his danger and precaution for his protection, and that the
   plaintiff had never worked behind a switchboard whereon the
   current was in operation.

No. 1217.   Submitted December 11, 1902.   Decided January 20, 1903.

HEARING on an appeal by the plaintiff from a judgment
of the Supreme Court of the District of Columbia on a ver-
dict for the defendant directed by the court, in an action to
recover damages for personal injuries.          *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. A. S. Worthington* and *Mr. Robinson White* for the
appellant.

*Mr. Charles C. Cole, Mr. Rudolph B. Behrend,* and *Mr.
R. S. Huidekoper* for the appellee:

1. It is only where the dangers are concealed and not ob-
vious and are known to the employer and unknown to the
employee and cannot be ascertained by him by the use of or-
dinary care and diligence, that the obligation of notice or
instruction on the part of the employer arises. *Hayzel* v.
*The Columbia Ry. Co.,* 19 App. D. C. 359; *Goulin* v. *Can-
ada Southern Bridge Co.,* 64 Mich. 190; *Mich. Cent. RR.
Co.* v. *Smithson,* 45 Mich. 212; *Junior* v. *Electric Light and*

*Power Co.,* 127 Mo. 79; *C., R. I. & P. RR. Co.* v. *Clark,* 108 Ill. 113; *Wabash RR. Co.* v. *Ray,* 152 Ind. 392; *Pa. Co.* v. *Ebaugh,* 152 Ind. 531; *Carr* v. *Manchester Electric Co. et al.* (Sup. Ct. N. H.), 48 Atl. Rep. 286; *Sweet* v. *The Ohio Coal Co.,* 78 Wis. 127; *McGrath* v. *Texas & P. Ry. Co.,* 60 Fed. Rep. 555.

2. If it was negligence on the part of Folsom to direct the work to be done behind the switchboard while the machinery was in motion and the wires alive, still the plaintiff could not recover because he was a fellow servant of Folsom, and the appellee is not liable for his negligence. *B. & O. RR. Co.* v. *Baugh,* 149 U. S. 368; *U. P. RR. Co.* v. *Helverson,* 162 U. S. 346; *U. P. RR. Co.* v. *Charless,* 162 U. S. 359; *N. E. RR. Co.* v. *Conroy,* 175 U. S. 323. See also *Tuttle* v. *Railroad Co.,* 122 U. S. 189, 194; *Railroad Co.* v. *Seley,* 152 U. S. 145.


Mr. Justice Morris delivered the opinion of the Court:

This action was instituted in the Supreme Court of the District by the appellant William E. Staubley as plaintiff, to recover against the Potomac Electric Power Company, a body corporate in this District, damages for personal injuries received by him at the power-house of the appellee while he was in its employment, in consequence, as he claims, of the negligence of the appellee. In his declaration he alleged that, while in the employment of the defendant as a lineman, he was directed by the foreman, under whose control he was, one Folsom, to do certain work near an electric switchboard, and that while he was engaged in this work he came in contact with a part of the switchboard and received an electric current by which he was severely injured. And it was further alleged that the accident was the result of the defendant's negligence in allowing a powerful current of electricity to pass through the switchboard and its appurtenances while the plaintiff was at work in close proximity to it, and in failing to protect the switchboard so that the plaintiff should not be brought in contact with the current,

and in failing to employ skilled help to do the work assigned to the plaintiff at the time of the accident.

After the general issue pleaded there was trial. At the conclusion of the plaintiff's testimony, the trial court, upon the motion of the defendant's counsel, directed a verdict for the defendant which was thereupon rendered and judgment was entered upon it. From this the plaintiff has appealed.

The only question in the case is whether there was testimony sufficient to be submitted to the jury; and upon this question we have to come to a different conclusion from that reached by the learned justice who presided in the trial court.

While it is true that persons who voluntarily engage in a dangerous occupation must take the ordinary risks of such occupation, and that an employer is not liable to an employee for injury sustained by the latter in the course thereof, it is equally true that the employer is bound to provide reasonably safe appliances for the use of the employee. The latter does not take all the risks of the employment, but only such as are ordinary and usual, and against which the employee may guard himself by the use of the care that is reasonably proper under the circumstances. In the case of *Hough* v. *Railway Co.,* 100 U. S. 213, the Supreme Court of the United States, speaking by Mr. Justice Harlan, said in reference to this matter:

" Nor shall we attempt to lay down any general rule applicable to all cases involving the liability of the common employer to one employee for the negligence of a co-employee in the same service. It is sufficient to say that, while the general doctrine, as stated by Chief Justice Shaw, is sustained by elementary writers of high authority and by numerous adjudications of the American and English courts, there are well-defined exceptions, which, resting as they clearly do upon principles of justice, expediency, and public policy, have become too firmly established in our jurisprudence to be now disregarded or shaken.

" One, and perhaps the most important, of these exceptions arises from the obligation of the master, whether a natural person or a corporate body, not to expose the servant,

when conducting the master's business, to perils or hazards
against which he may be guarded by proper diligence upon
the part of the master.   To that end the master is bound
to observe all the care which prudence and the exigencies
of the situation require in providing the servant with ma-
chinery or other instrumentalities adequately safe for use by
the latter.   It is implied in the contract between the parties
that the servant risks the dangers which ordinarily attend or
are incident to the business in which he voluntarily engages
for compensation; among which is the carelessness of those,
at least in the same work or employment, with whose habits,
conduct, and capacity he has, in the course of his duties, an
opportunity to become acquainted, and against whose neg-
lect or incompetency he may himself take such precautions
as his judgment or inclination may suggest.   But it is equally
implied in the same contract that the master shall supply
the physical means and agencies for the conduct of his busi-
ness.   It is also implied, and public policy requires, that
in selecting such means he shall not be wanting in proper
care.   His negligence in that regard is not a hazard usually
or necessarily attendant upon the business.   Nor is it one
which the servant in legal contemplation is presumed to risk,
for the obvious reason that the servant who is to use the in-
strumentalities provided by the master has ordinarily no
connection with their purchase in the first instance, or with
their preservation or maintenance in suitable condition after
they have been supplied by the master."

Also, in the case of *Mather* v. *Rillston,* 156 U. S. 391, the
Supreme Court of the United States, by Mr. Justice Field,
said:

"Occupations, however important, which cannot be con-
ducted without necessary danger to life or limb should not
be prosecuted at all without all reasonable precautions against
such dangers afforded by science.   The necessary danger at-
tending them should operate as a prohibition to their pursuit
without such safeguards.   Indeed we think that it may be
laid down as a legal principle that in all occupations which
are attended with great and unusual danger there must be

used all the appliances readily attainable known to science for the prevention of accidents, and that the neglect to provide such readily attainable appliances will be regarded as proof of culpable negligence. If an occupation attended with danger can be prosecuted by proper precautions without fatal results, such precautions must be taken by the promoters of the pursuit or the employers of laborers thereon. Liability for injuries following a disregard of such precautions will otherwise be incurred, and this fact should not be lost sight of. So, too, if persons engaged in dangerous occupations are not informed of the accompanying dangers by the promoters thereof, or by the employers of laborers thereon, and such laborers remain in ignorance of the dangers and suffer in consequence, the employers will also be chargeable for the injuries sustained. Both of these positions should be borne constantly in mind by those who engage laborers or agents in dangerous occupations, and by the laborers themselves as reminders of the duty owing to them."

In a case in Massachusetts, that of *O'Connor* v. *Adams,* 120 Mass. 427, it was said:

" There was evidence tending to show that defendant's agents put plaintiff in a place of peculiar danger, of which he had no knowledge or experience, without informing him of the risks or instructing him how to avoid them. The question of negligence was one properly to be submitted to the jury."

Applying these rules of law so emphatically stated to the case now before us, we find that they fully govern the case. The testimony set forth in the bill of exceptions, which is only that on behalf of the plaintiff, and which must be accepted as stating the truth, shows us a young man of the age of about 22 years, who had been in the employment of the defendant company for about six months, partly as a lineman and partly in the performance of jobs of different kinds about the various power houses of the company, who knew that live electric wires, as they are called, are more or less dangerous; who knew that switchboards, when electricity is distributed to the outside, are dangerous; who knew

all these things only in a general way, not much greater than we all know them, and who was directed by his employer's agent, to whose order he was subject, to go into a place of extreme danger, a narrow space about three feet wide between the wall of the power house and a switchboard bearing deadly currents of electricity, without warning of his danger or safeguard for his protection, which, it appears, might easily have been provided. The duty which he was required to perform at the time, in conjunction with another younger man, a mere boy, in fact, was to elevate or draw up a piece of heavy iron cable from the cellar through a hole in the floor to the narrow space behind the switchboard. The purpose for which this cable was to be used is not disclosed, nor is it of any consequence. Neither is it of any great moment that the foreman, who had given the order for taking up the cable, left the building before the work was undertaken; and it would seem that at the time the two men proceeded to perform the duty required of them, there were only two other men about the power house accessible to them, but not in their immediate neighborhood at the time.

The appellant and his companion first sought by their joint efforts in the cellar to push the cable up through the hole in the floor. This, on account of its weight, they were unable to accomplish. The appellant then, leaving his companion to hold the cable and push it as best he could, ascended to the space behind the switchboard, sought to pull up the cable, which he had much difficulty in doing, and in the effort his body swayed against the switchboard, touched a projecting iron lug heavily charged with electricity, and was severely injured. It does not appear from the record what purpose this lug, which projected nine or eleven inches from the inside face of the switchboard, subserved in the economy of the switchboard, or why it was charged with electricity, or why it was left uninsulated, when, as it appears, the wires on this face of the switchboard were all insulated, and when a small cap of india rubber could have sufficiently insulated this lug also.

The switchboard in question was composed of marble panels extending from the floor to the ceiling, and of different width, that behind which the appellant was injured being about eighteen inches. To these panels the electric wires are affixed. The electricity can be turned off from some panels and retained on others, and currents of different power can be sent through the different panels. It would seem that, at the time of the appellant's accident, the panel behind which the hole was through which the cable was being forced had no electricity on it, while the next panel against which the appellant suffered his injury had on it a current of very high and exceedingly dangerous force.

There was testimony tending to show that the appellant had never before worked behind a switchboard whereon the electric current was in operation; that he had never been warned about these lugs; that he had not been informed as to which panels contained the electric current; and that it was not the custom to take these cables to the rear of the switchboard except during the hours between half after one and five o'clock in the morning, when the powerful current to operate the street railroads was turned off. There was also conflicting testimony as to whether he was warned to beware of the switchboards; but the warning which was given, if any there was, does not appear to have been more than a general warning to " look out for that board," or to " look out for the high tension board," which was evidently insufficient to put the appellant on his guard against the lug by which he was injured.

Upon this record as now made it is very evident that there is testimony tending to show that the appellant was sent by his foreman, the agent of the company, into a place of unusual danger without proper warning to him of his danger, and without proper precaution for his protection. Upon this record he was entitled to go to the jury; and we think that it was error, in view of the authorities cited, not to have permitted him to do so.

We are of opinion that the judgment appealed from should

be reversed, with costs, and that the cause should be remanded to the Supreme Court of the District of Columbia, with directions to set aside the verdict and to award a new trial. And it is so ordered.　　　　　　　　*Reversed.*