## KATALLA CO. v. JOHNSON.

(Circuit Court of Appeals, Ninth Circuit. February 10, 1913.)

### No. 2,158.

1. MASTER AND SERVANT (§ 330*)—SERVANT OF INDEPENDENT CONTRACTOR—INJURIES — PREMATURE EXPLOSION OF DYNAMITE — EVIDENCE — NEGLIGENCE.

In an action for injuries to a servant of an independent contractor by the premature explosion of dynamite furnished by defendant for use in the work, evidence *held* to warrant a finding that the dynamite so furnished was old, and by reason of its age extrahazardous, which was the cause of the explosion.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1270–1272; Dec. Dig. § 330.*]

2. MASTER AND SERVANT (§ 321*)—SERVANT OF INDEPENDENT CONTRACTOR—CARE REQUIRED.

Where defendant furnished old dynamite for use in railroad construction, the interposition of an independent contractor did not relieve defendant from liability for negligence in failing to use every reasonable precaution to secure the safety of persons who . would be required to handle or use the dynamite so furnished in the prosecution of the work; and hence the interposition of an independent contractor did not relieve defendant from liability for negligence in furnishing such dangerous explosive, resulting in injury to a servant of a subcontractor by reason of premature explosion.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1262; Dec. Dig. § 321.*

Who are independent contractors, see note to Atlantic Transport Co. v. Coneys, 28 C. C. A. 392.]

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; George Donworth, Judge.

Action by John P. Johnson against the Katalla Company. Judgment for plaintiff, and defendant brings error. Affirmed.

This is an action for damages for personal injuries received by the plaintiff while employed as a laborer on the construction work of the Copper River & Northwestern Railroad, near Copper river, Alaska, in which the defendant company was engaged. Plaintiff's injuries were caused by the premature explosion of dynamite furnished by the defendant.

It is alleged in the complaint that the defendant negligently and carelessly furnished the men working with the plaintiff and in his immediate neighborhood dangerous and unsafe, defective, and extrahazardous dynamite for use by them in blasting the rock in a tunnel in which they were working; that the dynamite furnished was more than two years old, and by reason thereof unsafe to use and liable to explode prematurely, though handled carefully; that the dynamite furnished by the defendant had further been exposed to the air, wind, rain, snow, heat, and cold before it was given to the men for use, thereby rendering it extrahazardous, unsafe to use, and liable to explode, though handled carefully; that the age of said dynamite and its exposure to the elements and its extrahazardous condition by reason thereof were well known to the defendant and unknown to the plaintiff and the men using the dynamite, and to whom it was furnished by the defendant; that the defendant negligently and carelessly failed to inform plaintiff and the men using said dynamite of the extradangerous condition of the same; that while the men working with the plaintiff were loading a

hole in the rock with the dynamite so furnished by the defendant, in a proper and careful manner, the dynamite exploded prematurely by reason of its extradangerous, unsafe condition, and without warning and near the place where the plaintiff was working, causing the injuries received by the plaintiff; that the force of the explosion caused a large rock to fall on the plaintiff, by which he was injured, cutting his head, fracturing several ribs, and crushing his right foot; that by reason of these injuries plaintiff had been unable to earn any money or do any work, and, it is alleged, would remain a cripple and unable to do any work the remainder of his life. The defendant's answer put in issue the material allegations of the complaint.

The evidence on behalf of the plaintiff tended to establish the allegations of the complaint, and at the conclusion of the trial defendant moved the court to direct a verdict of the jury in favor of the defendant, upon the ground that the testimony was insufficient to entitle plaintiff to recover. This motion was denied. The jury returned a verdict in favor of the plaintiff for $7,500; but on motion of the defendant for a new trial the court held that the evidence did not sustain a verdict for $7,500, giving the plaintiff the option of reducing the verdict to $5,700 or accepting a new trial. Plaintiff thereupon filed his consent that the verdict be reduced to $5,700, and a judgment was accordingly entered for that amount.

W. H. Bogle, Carroll B. Graves, F. T. Merritt, and Lawrence Bogle, all of Seattle, Wash., for plaintiff in error.

Martin J. Lund, of Seattle, Wash., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). [1] It appears from the evidence that on May 26, 1910, the plaintiff and others were engaged in tunneling on the line of the railroad, when one Riley, a subcontractor, with another man, went into the tunnel to load dynamite into a hole which had been shot, but had not broken out. Riley's companion cut away the paper wrappers inclosing the dynamite, and Riley placed the dynamite in a hole with a stick. While engaged in this work in the usual way, the dynamite exploded prematurely in the hole, throwing out rock, which fell upon and injured plaintiff. Two witnesses testified that the dynamite being used at the time was in wrappers that were bleached and discolored, and appeared to be covered with an oily substance; that some of the sticks of dynamite had the date of May 15, 1907, printed on them.

I. F. Laucks, an expert mining engineer, testified that when dynamite had been stored for some time in a moist atmosphere the nitroglycerin comes to the surface, either underneath the wrapper, or gets through the wrapper and collects in drops, or sweats, and in that condition it is very dangerous because of the free drops of nitroglycerin. The witness was asked if it would be reasonably safe to give out dynamite two years old, or more, without inspection. His answer was:

"I don't think it would be reasonably safe. I would not do it myself, and I don't believe it would be safe."

This testimony was not contradicted, and the cause of the explosion was not otherwise explained by the evidence. As far as was observed by those in the immediate vicinity, the loading of the hole with dynamite by Riley was in the usual way. The dynamite was being pressed into the hole with a wooden stick. The expert witness Laucks was asked this question:

"Assume as a fact that some men are working in a tunnel on the railroad construction, and a box of dynamite is brought into the tunnel, with the sticks to be used in loading the hole, and two men are loading it. One man is cutting open the wrappers, and the other is shoving the powder down into the hole with the loading stick, consisting of wood, in the ordinary manner of loading dynamite; and while in the act of doing so an explosion is caused by the dynamite in the hole; the dynamite that is used in loading it being more than two years old; that the wrappers are moist, with an oily moisture, discolored—what would you say was the cause of that explosion?"

The witness answered:

"If the loading was properly done, I should say that the probability was all in favor of—in fact, there is nothing else—there is no other answer to that question, except that the dynamite was at fault."

This evidence was clearly sufficient to justify the jury in finding that the cause of the explosion was defective dynamite. It must be remembered that in such a case plaintiff is entitled to the benefit of all the inferences in his favor which the jury could have been justified in drawing from the testimony. Pleasants v. Fant, 22 Wall. 116, 22 L. Ed. 780; Kreigh v. Westinghouse & Co., 214 U. S. 249, 253, 29 Sup. Ct. 619, 53 L. Ed. 984; Sonnenberg v. S. P. Co., 159 Fed. 884, 886, 87 C. C. A. 64.

The accident occurred on May 26, 1910, near a station on the line of the road designated as "123." The dynamite was delivered by the defendant to the subcontractor engaged in the work at a station called Tiekill, and the distance from Tiekill to station 123 was about 22 miles. Samuel Murchison, the superintendent of the construction work for the subcontractor, testified that the dynamite was obtained from the defendant at Tiekill, and was taken by teams to station 123; that the time occupied in this transportation was from five to eight hours; and that during that time the dynamite was not exposed in any way to the weather, or to any condition that would tend to render the dynamite dangerous. The inference to be drawn from this testimony was that the dynamite was nearly three years old; that dynamite more than two years old is not reasonably safe; that the dynamite delivered to the subcontractor by the defendant was in the same condition when delivered that it was when being used at the time of the explosion. Against this inference the defendant contends that the dynamite was not defective, and had not deteriorated, because it had been supplied at different times from February to May, 1910, and had been used, and no explosion had occurred; but the defendant introduced no evidence upon the trial, and there is no evidence whatever as to the age or condition of the dynamite previously delivered to the subcontractor. The evidence as to the date on the wrappers, and the discolored condition of the wrappers indicating the defective and deteriorated condition of the inclosed dynamite, related only to the dynamite used in loading the hole, and which exploded, causing plaintiff's injury. To escape from the inference to be drawn from such a state of the evidence, it was incumbent upon the defendant to show that the dynamite delivered to the subcontractor was, at the time of its delivery, in good order and condition, and failing in this the jury was justified in find-

ing that the dynamite was in an unsafe condition when delivered by the defendant to the subcontractor.

[2] There was evidence to the effect that between the defendant and the plaintiff there was a subcontractor, who had charge of the work in which plaintiff was employed at the time of the accident. Upon this evidence defendant contends that its delivery of the dynamite to the subcontractor, assuming it to have been defective at that time, was not the proximate cause of the injury to the plaintiff, but that its subsequent delivery by the subcontractor to the workmen engaged in using the dynamite was the efficient cause of the accident. The defendant accordingly objected to the following instructions, given by the court to the jury:

"It is the law, however, that if the owner of a railroad engaged in constructing that railroad lets out a general contract for the construction of the road, and, knowing that that contract has been let and that large numbers of men are to be employed, or have been employed, in the actual work of construction, furnishes an explosive to be used by the individuals who are to actually do the definite construction of the work, it is the duty of the owner of the railroad furnishing that explosive, under those circumstances, to exercise ordinary care to see that the explosive furnished is not unnecessarily dangerous."

And it is objected that the court did not give the following instruction, requested by the defendant:

"And if the Katalla Company furnished unsafe explosives to said contractor, and the contractor knew the unsafe character of such explosives, or by reasonable inspection could have determined their character, and with such knowledge or opportunity of knowledge said contractor purchased from the Katalla Company such explosives, and an accident occurred in the use of the same, then the Katalla Company would not be liable, but the direct and proximate cause of such an accident would be the act of the contractor in using or furnishing for use such unsafe explosive."

In Mather v. Rillston, 156 U. S. 391, 399, 15 Sup. Ct. 464, 467 (39 L. Ed. 464), the Supreme Court of the United States stated the law applicable to this case in the following language:

"All occupations producing articles or works of necessity, utility, or convenience may undoubtedly be carried on, and competent persons, familiar with the business and having sufficient skill therein, may properly be employed upon them; but in such cases, where the occupation is attended with danger to life, body, or limb, it is incumbent on the promoters thereof and the employers of others thereon to take all reasonable and needed precautions to secure safety to the persons engaged in their prosecution; and for any negligence in this respect, from which injury follows to the persons engaged, the promoters or the employers may be held responsible and mulcted to the extent of the injury inflicted. * * * Occupations, however important, which cannot be conducted without necessary danger to life, body, or limb should not be prosecuted at all without all reasonable precautions against such dangers afforded by science. The necessary danger attending them should operate as a prohibition to their pursuit without such safeguards. Indeed, we think it may be laid down as a legal principle that in all occupations which are attended with great and unusual danger there must be used all appliances readily attainable, known to science, for the prevention of accidents; and that the neglect to provide such readily attainable appliances will be regarded as proof of culpable negligence. If an occupation attended with danger can be prosecuted, by proper precautions, without fatal results, such precautions must be taken by the promoters of the pursuit or employers

of laborers thereon. 'Liability for injuries following a disregard of such precautions will otherwise be incurred, and this fact should not be lost sight of."

The interposition of an independent contractor does not relieve the principal contractor from liability for negligence in failing to use every reasonable precaution to secure the safety of persons who will be required to handle or use dangerous explosives furnished by him for the prosecution of the work. It follows that the instruction given by the court stated the law correctly, and the instruction requested was properly refused.

Finding no error in the record, the judgment of the court below is affirmed.