PATRICK J. NORTON

*vs.*

MAINE CENTRAL RAILROAD COMPANY.

Cumberland.     Opinion April 30, 1917.

*Action under Federal Employers' Liability Act. Rule as to assumption of risk on part of plaintiff being open to defendant. Rule as to negligence on part of plaintiff being considered on question of damages.*

An action on the case under the provisions of the Federal Employers' Liability Act for the recovery of damages sustained by plaintiff by coming in contact in the night time, with the central girder of a bridge, of which he claimed he was ignorant and not warned, while in the discharge of his duties as a brakeman of defendant. At the close of the evidence of plaintiff, the defendant asked a directed verdict which was refused. The verdict was for plaintiff. Upon the exceptions to the refusal to direct a verdict for defendant, it is held that the question of negligence of the defendant and assumption of the risk by plaintiff were properly submitted to the jury.

Upon the motion for new trial, urged upon the ground that the damages are excessive by reason only of the alleged contributory negligence of plaintiff, the plaintiff denied all knowledge of the girder and any warning of it or its dangers. In this he was uncontradicted. The jury must have so found, as also non-assumption of the risk. Under these circumstances there was no ground for any finding of contributory negligence on the part of plaintiff.

Action on the case to recover damages on account of injuries received by plaintiff through the alleged negligence of defendant

company. Plaintiff, claiming that he was engaged in interstate commerce, brought his action under the provisions of the Federal Employers' Liability Act, 35 U. S. Statutes at Large, Chap. 149, page 65, and Chap. 143, page 291. Defendant filed a plea of general issue. Defendant offered no evidence, and at close of plaintiff's testimony defendant moved the court to direct a verdict in its behalf. The presiding Justice refused to grant said motion, to which ruling defendant filed exceptions. Verdict for plaintiff in the sum of fifteen thousand dollars. Motion for new trial filed by defendant. Exceptions and motion overruled.

Case stated in opinion.

*William H. Gulliver, and Elton H. Thompson,* for plaintiff.

*Symonds, Snow, Cook & Hutchinson,* for defendant.

SITTING: SAVAGE, C. J., KING, BIRD, HANSON, JJ.

BIRD, J. The plaintiff brings this action on the case under the provisions of the Federal Employers' Liability Act. (35 U. S. Statutes at Large, Chap. 149, page 65 and Chap. 143, page 291), to recover damages for injuries sustained by him through the alleged fault or negligence of defendant corporation. The case was submitted to a jury upon defendant's plea of the general issue. At the close of the testimony, the defendant offering none, the latter moved the direction of a verdict for defendant, and the motion being refused by the presiding Justice, the defendant had exceptions to his ruling and refusal. The verdict of the jury was for the plaintiff in the sum of fifteen thousand dollars. The defendant also filed the usual motion for new trial which is now urged only upon the ground of excessive damages.

The injury for which plaintiff seeks the recovery of damages was sustained at the easterly end of Carmel Bridge, a few miles westerly of Bangor.

The statement of the first count of the plaintiff's declaration as to the manner in which the injury of which he complains was received, is as follows:

"And the said plaintiff acting upon the orders and directions of the said engineer in charge of the said locomotive, as aforesaid, descended from said cab and onto the road bed between the said west bound track and the said east bound track and then and there walked

along between said tracks in the direction in which said train was then proceeding and commenced the work of bleeding and releasing the air brakes on certain freight cars hereinbefore mentioned; that at said time the said train was in motion and was proceeding westerly towards Portland at a rate of speed of five miles per hour; that at said time the plaintiff had been employed as a brakeman for a short period of time and had not been informed and was not aware of any dangers or obstructions in and about said portion of the defendant's track and road bed, and was not then and there informed by the engineer in charge of said locomotive or any other person of the existence of any dangers or obstructions at the place aforesaid; that the plaintiff while so walking along the said road bed and while in the exercise of due care suddenly and without warning walked into and against a certain obstruction, to wit, a certain truss or girder or beam standing between the said west bound and the said east bound tracks and close to the said tracks and the freight cars which were then and there passing over said railroad; that when the plaintiff then and there came in contact with said obstruction, to wit, with said truss, girder or beam, he was caused to fall under the moving cars on said railroad." Lack of knowledge of the plaintiff and failure of defendant to warn or caution are variously set forth in other counts.

The plaintiff at the time, October 4, 1913, he received the injury was a brakeman in the employment of the defendant. He was about twenty-one and one-half years old. Before he was appointed brakeman, he had served the defendant three years as freight handler and about a year and six months as freight checker. He had received the regular training of brakeman and his employment as such was accepted by himself and approved by the defendant. Plaintiff's training began on the first day of September, 1913, and was given him upon a division of the railroad of defendant other than that on which he received his injury. He began to run as brakeman on the latter division on the twenty-second day of September, 1913, and had been over the route seven times and on three of the runs passed Carmel bridge in the day light. On the other divisions of the road to which plaintiff was assigned, either for instruction or service, prior to his assignment to the Bangor route, there were no bridges constructed with a central girder, as was the Carmel Bridge. Although

he had bled the brakes in the day time, during his service upon other divisions of defendant's railroad, he had never performed this duty upon the division where he was injured.

On the night in question the train was upon a long up grade, the brakes were creeping, that is there was too much air pressure upon them.  There was danger that the locomotive would stop and, if this took place, the train could not start again except in sections. The engineer, besides giving the usual attention to his engine was engaged in working an appliance for distributing sand upon the rails. Under these circumstances the engineer told the plaintiff that he must get off and bleed the brakes.  This is done by pulling the bleeder rod on each car where the brakes are pressing, thereby letting the air out of the auxiliary cylinder.  The bleeder rods, extending out, or nearly, to the side of the car, are situated near the center (lengthwise) of the car, varying somewhat with different cars.  The "bleeding" is accomplished by pulling the rod outwards and holding it in this position till the air has escaped.  It is the duty of the brakeman to bleed the brakes when ordered.  In the present instance conditions required it.

The plaintiff, on receiving the order, completed the filling of his pipe, lighted it and descended from the train.  The place at which the plaintiff alighted was about one quarter of a mile from the under-pass bridge which was the scene of the accident.  The speed of the train was five or six miles an hour.  This bridge, passing over a high-way, carried two tracks with a girder between them, the girder being seventeen inches wide and thirty-nine and three-fourths inches high. The immediate place where the plaintiff alighted from the train was entirely free from obstruction and safe for walking or running and so continued until the bridge was reached.  The plaintiff, with his lantern in his hand and pipe in his mouth at once began bleeding the brakes keeping up with the speed of the train until, being uncon-scious of the vicinity of the bridge and looking with the aid of his lantern, for the bleeder rod of a car, which he had just grasped, he came in contact with the girder of the bridge, was thrown beneath the cars and most seriously injured.  He estimates that he had bled four or five cars before the accident.  The casualty occurred about one o'clock in the morning.  The night was dark, starless and some-what misty.  There is evidence to the effect that plaintiff had not noticed the peculiar construction of the Carmel Bridge, that his

attention had not been called to it by any officer or employee of defendant, that the engineer, when he ordered plaintiff to bleed the brakes did not tell him that the train was nearing a bridge with central girder and that he was not warned or cautioned in regard to it by any officer or employee of defendant.

It is admitted in the arguments of counsel that the jury was fully instructed "that they were to find that so far as this case was concerned the bridge was not unsafe or defective, and that defendant company was not negligent in failing to provide lights, guards and signals." We must assume that the jury respected the instructions thus given.

In support of its exceptions to the refusal of the court to direct a verdict, defendant urges the absence of negligence upon the part of defendant and assumption of the risk by plaintiff. Upon a most careful consideration of the evidence, the court is unable to conclude that there was no evidence of negligence of the defendant upon which the jury could find a verdict for plaintiff or that, as matter of law, there was no negligence in the failure of defendant or its servants to warn plaintiff of the presence of the girder. It was known to both engineer and conductor of the train that plaintiff was but recently employed for the first time as brakeman and they knew, or ought to have known, that his knowledge of the track of the division or route upon which he was employed was necessarily slight, or even casual. It is true that during the period of his "instruction" he was warned to be on the lookout for water pipes and switches, but not as to bridges with central girders. Water pipes and switches are not ordinarily found midway of stations. It was known, or should have been known, that at the rate of five miles an hour, and we have seen that the train was progressing at the rate of five or six miles per hour, the plaintiff, being obliged to keep up with the speed of the train, would encounter the bridge in three minutes. The estimate is uncontradicted that when the bridge was reached four or five cars only had been bled; so, too, the evidence that the plaintiff had, immediately before coming in contact with the girder, by the aid of the light of his lantern located and grasped the bleeder rod of the next car to be bled.

The recent case of *Portland Terminal Company* v. *Jarvis*, (U. S., C. C. A., 1st Cir.), 227 Fed. 8, where the only error assigned was a refusal to direct a verdict for the defendant, is not dissimilar to the

case under consideration. The plaintiff, a yard conductor of plaintiff in error, was, in the night time, swept or thrown from a tall car by an over-head bridge. He had been long employed in the yard, had frequently passed under the bridge, both by day and by night, had knowledge of the variance of freight cars in height, could have seen the car in question while standing in the yard for more than two weeks before the accident, and, on the evening, when injured, had passed along the train, lantern in hand, to the rear car, which he then mounted and from which he was thrown. The court holds it a question for the jury, whether the master was reasonably bound to anticipate plaintiff's presence on top the car at such place, and had knowledge regarding the car, material to his safety, which he could not reasonably have been supposed to possess and which it ought to have communicated to him. See also *Mather* v. *Rillston*, 156 U. S., 391, 398; *Potter* v. *Titusville F. & F. Land Co.*, 238 Fed., 759, 761, 762; *Welch* v. *Bath Iron Works*, 98 Maine, 361, 369, 370; *Young* v. *Chandler*, 102 Maine, 251, 253.

The defendant urges, as we understand, that the evidence conclusively shows that plaintiff assumed the risk of injury from the girder, that this court, should, so hold as matter of law, and that therefore, the refusal to instruct as it requested was error. This defense is undoubtedly open to defendant in this case. (*Seaboard Air Line Ry.* v. *Horton*, 233 U. S., 492). Ordinarily it raises a question of fact for the jury and we think this case presents no exception to the rule. The prime question was whether the plaintiff knew or ought to have known the danger and, knowing the danger, appreciated or ought to have appreciated it. This it was to determine upon the evidence and such inferences as might properly be drawn from it. It was a question upon which fair-minded men might differ. *Seaboard Air Line* v. *Padgeth*, 236 U. S., 668, 673; *McGovern* v. *P. & R. R. R.*, 235 U. S., 389, 403; See also *Chesapeake & Ohio Ry.* v. *Proffit*, 241 U. S., 462, 468; *Reid* v. *Steamship Co.*, 112 Maine, 34; *Colfer* v. *Best*, 110 Maine, 465, 467. See also *Potter* v. *Titusville F. & F. Co.*, supra.

In *Portland Terminal Co.* v. *Jarvis*, supra, the court, after discussing the question of the negligence of plaintiff and determining that it was properly submitted to the jury, says, "the same considerations prevent us from holding that it was error to refuse the ruling requested that on the evidence the danger from the bridge was a risk incident to

Jarvis' employment, obvious to him if he had exercised ordinary care, and therefore assumed by him. If the failure to exclude the car in question from the train, or the omission to caution him, regarding its height, were due to negligence on the part of his fellow employes, the defendant cannot say that the risk of injury from these causes was assumed."

We conclude that the exceptions to the refusal to direct a verdict for defendant must be overruled.

Under its general motion defendant contends that the damages are excessive by reason of the contributory negligence of the plaintiff, invoking the provision of the Act under which the action is·brought; "The damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." No other ground is urged.

The plaintiff, however, denied all knowledge of the girder, or that he was warned, of it or of its dangers. In this he was uncontradicted and the jury must have found that he was not aware of the existence of the girder, that he was not warned or cautioned in regard to it, that such lack of warning was negligence on the part of defendant and that plaintiff did not assume the risk. Could the jury, having so found, upon the evidence have also found contributory negligence? In *Mather* v. *Rillston,* 156 U. S., 391, 400, Mr. Justice Field, in closing the opinion of the court has occasion to say "it is plain from what has already been stated that the plaintiff knew nothing of the special dangers attending his work, or that he was at all informed by the defendants on the subject. His testimony is positive on this point, and and is not contradicted by any one. With that fact shown there was not ground for any charge of contributory negligence on his part." It would seem that the answer to our inquiry must be in the negative.

*The exceptions and motion must therefore be overruled and it is so ordered.*