## ALVIE JOHNSON v. ATWOOD LUMBER COMPANY.[1]

June 14, 1907.

Nos. 15,132—(135).

**Negligence of Master.**

According to the undisputed evidence, respondent was guilty of negligence in failing to use a safeguard appliance to reduce an opening in the frame of an edger machine.

**Contributory Negligence.**

It does not conclusively appear from the evidence that appellant's intestate was guilty of contributory negligence, or assumed the risk of oper-

[1]Reported in 112 N. W. 262.

ating the machine after the guard had become shattered by recoiling edgings.

**Judgment Notwithstanding Verdict.**

 It was error to grant respondent's motion for judgment notwithstanding the verdict.

Action in the district court for Pine county by plaintiff as administrator of the estate of Ole Johnson, deceased, to recover $5,000 for the death of intestate. The case was tried in the district court for Ramsey county before Bunn, J., and a jury, which rendered a verdict in favor of plaintiff for $1,500. From an order granting a motion for judgment notwithstanding the verdict, plaintiff appealed. Reversed with order to enter judgment for appellant.

*C. D. & R. D. O'Brien,* for appellant.

*Howard T. Abbott,* for respondent.

LEWIS, J.

Appellant recovered a verdict against respondent in the court below for the death of Ole Johnson, killed while operating an edger in respondent's sawmill. The trial court granted respondent's motion for judgment notwithstanding the verdict.

The order of the trial court cannot be sustained, unless it conclusively appears from the evidence that respondent was not guilty of negligence in furnishing a defective or improperly guarded machine, or unless it appears that Johnson assumed the risk of operating the edger in its defective condition, or was guilty of contributory negligence.

The edger in question was of the standard type, manufactured for the purpose of sawing off the edges of lumber. Briefly stated, it consists of two circular saws hung contiguous to a frame in such a way that, by means of levers, they may be adjusted and operated by the edgerman, who stands at the end of the table, about eleven feet distant from the saws. The boards, or "cants," having been placed on the table, the edgerman pushes them along over a spiked and under a smooth roller to the saws, which hang on the opposite side of the frame. After the saws have been properly adjusted, the boards are carried forward by means of rollers and, when sawed, delivered at the opposite end of the machine. As constructed, there is a slot, or opening, in the frame of the edger about two inches wide and thirty inches long, and through

this opening the edgerman, standing at the head of the table, some ten feet distant, watches the saws in operation. In the process of the sawing, edgings are often caught by the rapidly revolving saws and thrown back against the frame with terrific force, and on this occasion a piece of 2x4, about twelve feet long and pointed at one end, shot back through the opening, piercing the body of Johnson, and causing his death.

According to the evidence it was not unusual for small pieces of boards and knots to be thrown back through the opening, to some extent endangering the men working in front of the table. As manufactured and sent into the market, such machines are not furnished with a guard, and it is conceded that something of an opening is necessary to enable the edgerman to look at the saws as he adjusts them. One of the foremen, Binger, in the employ of respondent when Johnson was employed there, but before this accident, testified that before he came to respondent's mill he was foreman in a Minneapolis mill, and in order to reduce the risk of injury to the men who worked at the edger he caused a board to be bolted to the framework of the machine in such a manner as to close about one-half the space, and that in the spring of 1902, in respondent's mill, he put such a board on the edger in question. It appears that such guard remained on for about two seasons and a half, when it was shattered by the recoiling pieces of timber, and was not replaced.

It does not follow that the machine in this case was properly guarded, without the board, simply because it was one of the standard type, manufactured for such purpose. The dangers of operating a machine, and whether it can be guarded, so that it will be more safe than as manufactured, can only be determined by experience. An employer cannot be excused from operating a machine, although of standard type, when a reasonable amount of experience and observation has developed the fact that it is inherently dangerous, and can be made reasonably safe by attaching safeguard appliances.

From the evidence in this case, it clearly appears that the opening in the machine in question was larger than necessary, and that it was exceedingly dangerous to operators, and that experience demonstrated the feasibility of materially reducing the chance of injury by using a board to lessen the opening. Such being the fact, respondent was guilty of negligence in permitting the machine to be used without a guard.

It is undisputed that the deceased, a man of about forty four years of age, had worked in sawmills some seven or eight years, and as edgerman in this particular mill four or five seasons. As testified to by Foreman Binger, he put the guard on the machine when entering on his duties as foreman, and it remained until broken and taken off, as stated. It is undisputed that Johnson continued to work at the edger for a season and a half without it, and until he was killed. The witness Olson, called for appellant, who worked by the side of Johnson, testified that when the board broke Johnson took off the remaining portions of it; but it does not appear from the evidence on the part of appellant why a new board was not put on, and why Johnson continued to use the machine without guards. Binger testified for respondent that Johnson had requested that the board be left off, so that he could better see his saws, and that he (Binger) so reported to the superintendent; but it does not appear that the guard was left off for that reason. Foreman Wheeler, who came after Binger, testified that during the time he was with respondent the edger was operated without a board, and, in answer to a question whether an edgerman would be justified in working without it, said that so far as his experience went he would.

The learned trial judge seemed to have been impressed with the fact that Johnson assumed the risk because he remained and operated the edger for a season and a half after the removal of the board, knowing that pieces of timber were likely to come back through the opening. There are some features of the case strongly supporting this conclusion; but to do so it is necessary to give full credence to the testimony of the witnesses called on behalf of respondent as to what was said by Johnson. In a case of this kind, when the principal party involved is removed by death, and his testimony unavailable, the court should proceed with great caution in taking for granted the statements of witnesses who are likely to be influenced by their surroundings. Under such circumstances, the credibility of the witnesses is of great importance, and in this case, unless it appears conclusively from the evidence that the board was left off as a result of the special request of Johnson, and that he appreciated the risk of operating the machine without it, the order of the trial court cannot be sustained.

There is some evidence that Johnson had before been hit by small pieces thrown back through the opening, and at first impression it would seem that he must have known and appreciated the risk of remaining at work. But the accident resulting in his death would probably not have happened, had the board been renewed, and the responsibility of properly guarding machines should not be transferred from the employer to an employee, unless the evidence is very clear that the laborer fully understood and appreciated the risk. Under all the circumstances, we are of opinion that the trial court was right in submitting that question, and the question of contributory negligence, to the jury, and was in error in granting the motion for judgment notwithstanding the verdict.

Order reversed, with directions to enter judgment for appellant for the amount of the verdict.