## EMPLOYERS NOT EXCULPATED FROM BLAME BY FURNISHING APPLIANCES IN ORDINARY USE.

Court of Appeals for Hamilton County.

DRESES MACHINE TOOL COMPANY v. JAMES G. HENDERSON, A MINOR, BY LORENZ LEMPER, HIS NEXT FRIEND.

Decided, March 8, 1915.

*Negligence—Flying Splinter from Lathe Causes Operator to Loose an Eye—Guards Against Such an Injury Not in General Use, But Employer Held Liable.*

The fact that machines of a certain type are used in the trade without guards for the protection of employees operating them, and that although guards are known to the trade their use is infrequent, does not render it improper to submit to the jury the question of whether in the case under consideration the defendant employer was guilty of negligence in not providing a guard; and where the jury has found that negligence existed, and has fixed reasonable damages which should be paid to the injured employee on account of such negligence, a reviewing court will not disturb the judgment based thereon.

*Robertson & Buchwalter* and *Theo. C. Jung*, for plaintiff in error.

*Littleford, James, Ballard & Frost*, contra.

GORMAN, J.

The action below was one to recover damages by the defendant in error, a minor by his next friend, for personal injuries claimed to have been received while working upon a turning lathe in the machine tool shop of the plaintiff in error. It was alleged in the petition, and the evidence tended to show, that the defendant in error James G. Henderson, while at work for the plaintiff in error on or about the 24th of November, .1912, in its machine tool shop on McMicken avenue in this city, engaged in operating a certain lathe to turn mitre gears from steel castings, was injured by a splinter or sliver from the steel casting thrown

from the lathe into his left eye, thereby causing the loss of sight in said eye.

It was claimed in the petition that the negligence of the defendant consisted in failing to place a guard over the tool which did the cutting of the steel casting which was being turned in the lathe to make the mitre gear. There was a great deal of testimony offered pro and con upon the practicability of the use of a guard.

The evidence of Henderson tended to show that guards were used at the LeBlond Machine Tool shop in the city of Cincinnati, where the same sort of lathes were in use as the one at which he was at work when injured. There was also other evidence tending to show that guards made of sheet iron or galvanized iron and cardboard were used in many shops in the city of Cincinnati, which guards were usually made by the employees operating the lathes. It was further shown in evidence that the superintendent of the Dreses Machine Tool Company knew of the practice of using guards, and that he had known them to be used when mitre gears were turned out of brass rather than steel. There was also evidence of others that they had used guards and known of them to be used. But the great weight of the evidence tended to show that guards were not used generally upon lathes of the kind involved in the case at bar.

There was a verdict in favor of plaintiff, Henderson, in the court below for $4,000, and a judgment entered upon that verdict. It is now claimed that there is error in the record of the case which calls for a reversal by this court.

Practically the only grounds upon which plaintiff in error claims a reversal in this court are, that upon the facts shown in the case there was no culpable negligence upon the part of the Dreses Machine Tool Company; that the use of a guard upon the machine in question was impracticable and not in general or customary use, and that it was contrary to the custom of the trade to use a guard. There was evidence tending to show that where these guards were used, made of sheet iron, galvanized iron or pasteboard, the dangers resulting from the flying of particles of steel were greatly minimized if not entirely re-

moved. There was also evidence tending to show that guards are manufactured and sold made of wire gauze close meshed, and glass, which when placed in position before the cutting tool deflect the particles of steel thrown off so they can not come in contact with the eyes of the operator.

The contention of the defendant is that the rule to be observed in a case of this kind is that the master is not bound to furnish the most approved appliances that may be had in his business; that he has performed his duty when he has furnished appliances of ordinary character and reasonable safety in general use; and that the evidence in this case tends to show that it was not customary to employ guards upon these lathes. The evidence is conflicting upon the practicability of the use of guards, and the great preponderance of the evidence tends to show that the guards were not in general use.

But we do not think that this is determinative of the question of negligence in this case. We do not think that the right of plaintiff to recover depends upon the fact that the guards were usually, generally or customarily used upon the kind of lathes at which he was put to work.

In 1911 the Legislature amended Section 1027, General Code, so as to read as follows:

"The owners and operators of shops and factories shall make suitable provisions to prevent injury to persons who use or come in contact with machinery therein or any part thereof as follows:
* * *. * * . * * * * * * * *
"7. They shall guard all saws, wood-cutting, wood-shaping and all other dangerous machinery."

Previous to the amendment of this section in 1911, this subdivision of the section required only the guarding of saws, wood-cutting and wood-shaping machinery, and by the addition of the words "all other dangerous machinery," the court is of the opinion that the Legislature intended to extend the provisions of guarding to all dangerous machinery.

Now we think the evidence in this case tends to show that this was a machine attended with more or less danger in its operation. It was of frequent occurrence for those who operated

machines of the character of the one involved in the case at bar to have splinters of steel or metal fly into their eyes, and to the extent that there was danger to the eyes of the operative we believe that the machine was dangerous and that by the terms of the statute it was incumbent upon the plaintiff in error, as it was upon every other owner of such shops, to guard the lathes so as to minimize the danger that would result to the operatives.

It is laid down in Section 916, Labatt's Master & Servant, Vol. 3, 2d Ed.:

"That the entire failure to furnish any instrumentalities or materials in a case where they are necessary for the servant's protection is not less a breach of the duty to furnish proper instrumentalities or materials than is the furnishing of instrumentalities or materials which fall below the legal standard of safety. A servant who bases his right of action on the total lack of requisite appliances must show that, under the circumstances, they were reasonably necessary for his protection from a danger which the master knew or ought to have known to be incident to the work, and that they were either not obtainable at all or were not readily accessible."

Now the plaintiff's right to recover in this case is based upon the absence of a guard, and that it was reasonably necessary to have such a guard in order to protect him. There is a conflict of authority as to whether or not the master has performed his duty when he has furnished a machine such as is ordinarily or customarily in use, or whether or not he must go further and furnish appliances and machinery which are readily obtainable and known to science or the trade which will tend to protect the operator and employees.

Section 940 of Labatt's Master & Servant, Vol. 3, states the rule as follows:

"Where the only inference that can be reasonably drawn from the evidence is that the master conformed to the general usage of the average member of his trade or profession with respect to the adoption or retention of the instrumentality in question, he may be declared as a matter of law to have been in the exercise of due care. The language in which this doctrine is formulated

or referred to would, if taken literally, often convey the idea that the generality of the usage and the similarity of the business or establishment of which the usage is adduced as a standard of comparison are the only points to be considered, and that the manner in which that business or establishment is conducted, and the character of the persons engaged in it are not material factors in the question to be determined."

But, he says:

"It is clear that under the general principles of the law of negligence, these latter elements must be material, and that the test really propounded is not usage of any employers, however imprudent and unskilful, or of any concerns, however ill regulated, but the usage prevailing among prudent and skilful employers and in well regulated concerns. That this is the actual position taken is shown by the following extract from the opinion in a leading decision by a court which has been one of the most uncompromising exponents of the doctrine now under discussion."

The author then quotes the language of the court in the section above cited. The author does not agree with those courts which hold that the master has performed his duty when he furnishes machinery and appliances such as are in ordinary and general use. In Section 947 of Volume 3, he says:

"*The doctrine that conformity to common usage is not conclusive in the master's favor.* The principle upon which a large number of decisions is based, some of which emanate from the courts whose rulings are reviewed in the preceding sections, is that embodied in the remark of Wiles, J., with reference to the plea put forward by the defendant in a well-known case, that, 'no usage could establish that what is in fact is unnecessarily dangerous was in law reasonably safe as against persons towards whom there was a duty to be reasonably careful. That is to say, the position is taken that custom furnishes no excuse, if the custom itself is negligence. In this point of view the master's conformity to general usage is regarded merely as evidence tending more or less strongly to exculpate him from the charge of negligence. After it has been shown that the defendant had complied with the usage of other employers in the same line of business the question whether the particular instrumentality or

method was reasonably safe still remains open, and unless it is decided in the master's favor, he must indemnify the servant.''

The author states that it is proper for the master, in an action by the servant to recover damages, to introduce evidence tending to show that he conformed to the general custom and that he furnished an ordinarily safe machine or appliance, but nevertheless it is still a question to go to the jury whether or not the master has performed his full duty even when he furnishes machinery and appliances in general and ordinary use in the business. He cites a great number of authorities in various states to show that the latter view is very strongly maintained in many jurisdictions. On page 2550 of the 3d volume, under Section 947, he says:

''In spite of the imposing array of authorities which have adopted the doctrine explained in paragraph 940 et seq., the present writer has no hesitation in saying that in his opinion the cases just cited embody the correct principle. The essential meaning of the theory that the case ceases to be one for the jury when conformity to common usage is once established, is that employers ought to receive the benefit of a presumption which may be thus expressed: The persons who pursue a particular line of business at any given time are reasonably prudent, and the majority of a reasonably prudent body of persons will not use unsuitable instrumentalities or methods when suitable ones are available. As a basis for the doctrine founded upon it, however, this presumption seems to be extremely unsatisfactory.''

He then proceeds to show at length that this presumption does violence to reasonable logic and experience, and concludes the section (947) with these words:

''Under such circumstances, it is submitted, there is no sufficient basis upon which to found an inference of law that an employer fulfills his duty when he adopts instrumentalities and methods which are in common use.''

In Bailey on Personal Injuries, Master & Servant, Vol. 1, pages 381, 382, 383, it is stated that while it is proper for a master to be permitted to introduce evidence to show that he conformed to

the general and ordinary custom in the furnishing of machinery and appliances, nevertheless it is still a question for the jury to determine whether or not he was negligent notwithstanding such appliances. On page 382, he cites this case:

"An employer, however, was held guilty of negligence in not furnishing a guard to prevent small pieces of boards and knots from being thrown back. The machine was of standard type and as sent into the market such machines were not furnished with a guard, yet upon the evidence of a former employee that he caused a board to be bolted to the frame work of the machine to act as a guard, which remained for about two seasons and a half, when it was shattered by recoiling pieces of timber and was not replaced, it was held that the employer was liable in not providing some other device. It was said that an employer could not be excused for operating a machine, although of standard type, when a reasonable amount of experience and observation has developed the fact that it is inherently dangerous and could be made reasonably safe by attaching safeguard appliances. See *Johnson* v. *Atwood Lumber Co.*, 101 Minn., 325; 112 N. W., 262.

In the case of *Roy Lumber Co.* v. *Donnelly*, 31 Ky. L. Rep., 601, the court of appeals on page 603 employs this language: —"The third contention of the appellant is error in the instructions."—

"The court in effect instructed the jury that they should not find for appellee, if the saw was guarded and protected with safe appliances, as was customary and usually employed with such saws to make them safe and prevent them from swinging out into the room.

"This is not the true test, and was prejudicial to appellee. It was proper for appellant to introduce testimony showing that this saw was placed, guarded and protected as such saws used for a like purpose are usually and customarily guarded and protected. If the saw in question was so guarded and protected, it created a strong but not conclusive presumption that it was reasonably safe. If the custom and manner of hanging and guarding these saws is dangerous, it should not prevail, if they could be swung and protected in a reasonably safe way."

The court is of the opinion that, aside from the question of whether or not this case is covered by the statute, Section 1027,

General Code, it was proper to submit to the jury the question of whether or not the master, plaintiff in error, was relieved from liability by furnishing a lathe without a guard and that that was the custom and general method of furnishing lathes to employees.

We think the great weight of authority supports the rule laid down in the case of *Mather* v. *Rillston*, 156 U. S., 391. The opinion was announced by Justice Field, in which he says:

"All occupations producing articles or works of necessity, utility or convenience may undoubtedly be carried on, and competent persons familiar with the business and having sufficient skill therein may properly be employed upon them, but in such cases where the occupation is attended with danger to life, body or limb it is incumbent on the promoters thereof and the employers of others thereon to take all reasonable and needed precautions to secure safety to the persons engaged in their prosecution, and for any negligence in this respect, from which injury follows to the persons engaged, the promoters or the employers may be held responsible and mulcted to the extent of the injury inflicted. * * * Occupations, however important, which can not be conducted without necessary danger to life, body or limb should not be prosecuted at all without all reasonable precautions against such dangers afforded by science. The necessary danger attending them should operate as a prohibition to their pursuit without such safeguards. Indeed, we think it may be laid down as a legal principle that in all occupations which are attended with great and unusual danger there must be used all appliances readily attainable known to science for the prevention of accidents, and that the neglect to provide such readily attainable appliances will be regarded as proof of culpable negligence."

In the case at bar we think the evidence shows that there was known to science and to those employers using lathes, such as the one in question, guards which would prevent or minimize the danger attending the flying of steel splinters from the metal which would have a tendency to injure the eyes of the operator. We think the evidence in this case fully discloses that if a guard such as the operators had used themselves, of sheet iron or pasteboard had been used, the probabilities are that the plaintiff below would not have suffered injury to his eyes. It is further shown that other kinds of guards were known to science

and attainable, and it was proper to submit the question to the jury whether or not the master had done his full duty when he furnished a machine without a guard, even though that was the usual and customary method of furnishing machines. It was in the last analysis for the jury to say whether or not a reasonably prudent employer, in view of the experience which he had, or should have had, would not have taken further precautions to protect his employees.

This being practically the only question involved in this case, except the question of the excessive amount of the verdict—which we do not believe was excessive—we are of the opinion that the judgment of the court below was in accordance with substantial justice, and that the judgment should be affirmed.

JONES (E. H.), P. J., and JONES (Oliver B.), J., concur.